### In re BIG RIVERS ELECTRIC CORPORATION, Debtor.

**Pacificorp Kentucky Energy Corporation and Pacificorp Power Marketing Inc., Appellants,**

v.

**Big Rivers Electric Corporation and LG & E Energy Corporation, Appellees.**

**Civ.A. No. 4:98CV–45–M.**

United States District Court, W.D. Kentucky, Owensboro Division.

Dec. 14, 1998.

William D. Kirkland, Christopher M. Hill, McBrayer, McGinnis, Leslie & Kirkland, Frankfort, KY, Richard C. Josephson, David E. Filippi, Stephen A. Redshaw, Stoel Rives, Steven T. Lovett, Steven T. Lovett, Portland, OR, for Pacificorp Kentucky Energy Company and Pacificorp Power Marketing, Inc.

Michael A. Fiorella, Sullivan, Mountjoy, Stainback & Miller, P.S.C., Owensboro, KY, Mark S. Kaufman, Laura F. Nix, Russell A. Tolley, Joelle J. Phillips, Long, Aldridge & Norman, Atlanta, GA, for Big Rivers Electric Corporation.

Paul Edward Porter, Greenebaum Doll & McDonald, Louisville, KY, Richard S. Miller, Dewey Ballantine, New York City, for LG & E Energy Corporation.

## MEMORANDUM OPINION

McKINLEY, District Judge.

Pacificorp Kentucky Energy Corporation (hereinafter PKEC) and Pacificorp Power Marketing Inc. (hereinafter PPM) (collectively referred to as Pacificorp Entities) appeal from the bankruptcy court's disallowance of the Pacificorp Entities Proof of Claims numbered 133 and 135. In these claims, the Pacificorp Entities sought to recover its benefit of the bargain under the Onmibus Agreement between PKEC and Big Rivers Electric Corporation (hereinafter Big Rivers) and the costs incurred in undertaking actions that substantially benefitted the estate. The Pacificorp Entities filed an opening brief on March 23, 1998. Big Rivers filed its opening brief on April 7, 1998 and LG & E Corporation filed its brief on April 8, 1998. The Pacificorp Entities filed a reply brief on April 20, 1998. The Court, having considered these briefs, finds the matter ripe for decision. For the following reasons, the decision of the Bankruptcy Court is **AFFIRMED.**

### STATEMENT OF FACTS

In the face of various economic pressures, Big Rivers filed a voluntary Chapter 11 petition for reorganization on September 25, 1996. PPM previously contracted with Big Rivers to serve as an energy broker. Recognizing Big Rivers was in dire straits, PPM negotiated to lease Big Rivers' assets and established PKEC to carry out this purpose. These negotiations resulted in the parties reaching the Omnibus Agreement on August 29, 1996, a month prior to the filing of the bankruptcy petition.

A review of the Omnibus Agreement is necessary for an understanding of Pacificorp Entities' claims for the benefit of the bargain and administrative expenses. [Record on Appeal No. 123 Attachment A]. The Omnibus Agreement provided PKEC would lease Big Rivers' electric generation plants, provide power to Big Rivers' customers, and market any excess power. [*Id.* at 2] This agreement contains a number of condition precedents to the consummation of the transaction. [*Id.* at 18]. Such conditions relevant to this appeal include: 1) approval of the agreement by any bankruptcy court having jurisdiction over Big Rivers; 2) no material modification to the existing purchase arrangements among the applicable Member Cooperatives and NSA, Inc. or Alcan Aluminum Corporation or their successors; 3) approval of the agreement by the Kentucky Public Service Commission; and 4) obtaining an agreement with the City of Henderson which would assign to PKEC contracts between Big Rivers and the city.

Section 6.3 of the Omnibus Agreement included a provision requiring each party to use reasonable efforts to effect the transaction and fulfill the conditions set forth in the agreement. [*Id.* at 17]. Furthermore, Section 5.4 of the Agreement contains what the bankruptcy court referred to as the "No–Shop Clause." This section reads

Section 5.4 *No Negotiations with Others*

Except with prior written consent of PKEC, Big Rivers shall, at all times after the approvals described in Section

8.6 [approval of Big Rivers' Board] have been obtained, refrain from (a) initiating or soliciting any inquiries or making any proposals with respect to, or engaging in negotiations concerning, or (b) except as required by a court of competent jurisdiction, providing to any person (other than a governmental entity) any confidential information relating to, any business combination with Big Rivers or any lease, acquisition or purchase of all or any significant portion of the Assets. *Id.* at 16. This provision prevented Big Rivers from actively soliciting or entertaining competing offers from other entities.

PPM and PKEC expended much time, effort and money in negotiating and documenting the Omnibus Agreement with Big Rivers. Furthermore, PPM undertook actions to negotiate with Big Rivers' customers, most notably the Smelters, suppliers, and creditors. PPM also analyzed Big Rivers' productivity and manpower issues along with performing other environmental analysis.

After filing of the bankruptcy petition, Big Rivers filed its Disclosure Statement and proposed a Plan of Reorganization on January 22, 1997 based upon the agreement entered into with PKEC. However, shortly after filing this plan, LG & E approached Big Rivers with two plans which proposed to lease or purchase substantially all of Big Rivers' assets. These two plans' value exceeded that of the Omnibus Agreement with PKEC by $37,000,-000 to $57,000,000. Big Rivers, however, rejected this offer citing that the contract with PKEC prohibited it from negotiating with other parties. The No Shop Provision prohibited Big Rivers from even discussing the nature of this offer with LG & E. Big Rivers then attempted to extend the exclusivity period and proceed with its Plan of Reorganization based on Omnibus Agreement.

LG & E did not end its quest for the assets of Big Rivers. On February 18, 1997, LG & E filed an objection to the extension of the exclusivity period and in-

formed the bankruptcy court of its competing plans. This motion sought to allow LG & E time to complete its due diligence, to declare as unenforceable the No Shop Provision of the Omnibus Agreement, and to establish a procedure for an auction. The bankruptcy court conducted a hearing the next day on this matter. Big Rivers and several creditors spoke in favor of continuing with the PKEC transaction. However, Green River Coal Company, a creditor with a claim of over $115,000,000, did not support the PKEC Omnibus Agreement. The City of Henderson also expressed reluctance to proceed with the PKEC plan. The City of Henderson, a major purchaser of power from Big Rivers, never reached an agreement with PKEC. PKEC noted its objection to LG & E's motion and informed the court that it would not be the "stalking horse" upon which all competing bids were based. PKEC also informed the court of its refusal to extend the Omnibus Agreement's May 31, 1997 expiration date.

In light of this new plan which could potentially increase the size of the Big Rivers bankruptcy estate, the bankruptcy court ordered an auction. The auction procedures required as a condition to submitting a bid that the bidder complete the PKEC agreement in the event PKEC refused to perform. Additionally, the bankruptcy court established a $10,000,000 cushion for PKEC by requiring the bid for Big Rivers' assets to exceed PKEC's plan by that amount. The auction procedures directed Big Rivers to propose a Plan of Reorganization containing the highest bid. Big Rivers appealed the auction order and filed a motion to stay the bankruptcy proceeding pending the appeal because it believed the creditors supported continuing with the PKEC based plan of reorganization. Several of the major creditors, however, informed Big Rivers of their desires to proceed with the auction. Therefore, Big Rivers did not pursue the appeal and complied with the auction order.

The bidding process produced only two bidders. PKEC refused to participate in

the bidding process. LG & E submitted the highest bid at a value $50,000,000 greater than that of the PKEC's plan. Big Rivers then submitted an Amended Plan of Reorganization on June 9, 1997 which the bankruptcy court approved by an order dated the same day.

The Pacificorp Entities did not easily accept defeat. While the Pacificorp Entities did not file an objection to the auction order nor the order directing Big Rivers to file an Amended Plan of Reorganization based on the LG & E bid, the Pacificorp Entities did file a Motion to Withdraw Reference of the Big Rivers Case with the District Court, a Motion for Recusal of the Bankruptcy Judge and Removal and Sanction of the Examiner,[1] a Writ of Mandamus proceeding requesting the District Court order the Bankruptcy Judge to Recuse Himself, and an Appeal from the Bankruptcy Court's Order Confirming the Amended Plan of Reorganization. Additionally, the Pacificorp Entities filed several Proofs of Claim with the Bankruptcy Court, two of which are the subject of this appeal.

In Claim Number 133, PPM seeks to recover the following costs as an administrative expense pursuant to 11 U.S.C. § 503(b)(3) & (4):

1) documenting the transactions that formed the basis of Big Rivers' plan of reorganization.

2) sharing with Big Rivers the expense of a Baseline Audit of environmental issues relating to Big Rivers' plants, analyzing the approach to the audit, and assisting in the selection of a consultant to perform the audit;

3) assisting Big Rivers in negotiating revised contracts with Costain Coal

Company regarding three of Big Rivers' over-market fuel supply contract;

4) negotiating a lien accommodation with the RUS so that replacement letters of credit could be issued to the New York banks;

5) analyzing Big Rivers' manpower issues;

6) assisting Big Rivers in structuring new power supply agreements with the Smelters; and

7) preparing testimony to be presented to the Kentucky Public Service Commission in anticipation of hearings regarding approval of the transaction.

[DN 3 p 7]. The Pacificorp Entities claim asserts that these activities substantially contributed to the resolution of the bankruptcy case so as to warrant a recovery of such costs as an administrative expense.

In Claim Number 135, the Pacificorp Entities sought to recover $25,000,000 as the loss of the benefit of the bargain on the Omnibus Agreement. [DN 3 p 17]. This claim argues that the Omnibus Agreement was an executory contract that Big Rivers neither expressly accepted nor rejected. PKEC contends that Big Rivers did not terminate the contract, nor could it, based on the failure of one of the condition precedents listed in the agreement. Furthermore, Big Rivers cannot rely on the Omnibus Agreement's provision providing for the May 31, 1997 expiration date because it failed to use reasonable efforts to met its obligations to effectuate the transaction. PKEC alleged the following actions display Big Rivers failure to use reasonable efforts to fulfill its obligations under the agreement:

1) Big Rivers failure to file a plan of reorganization based on the Omnibus

---

1. The Pacificorp Entities appealed to this Court the bankruptcy court's decision denying the Motion to Recuse the Bankruptcy Judge and Remove and Sanction the Examiner. This Court held in joint opinion *In re Big Rivers Electric Corp.,* No. 4:97MC–7–M & No. 4:97CV–207–M that the Pacificorp Entities appeal was not an appeal as a matter of right.

Furthermore, this Court denied the Pacificorp Entities motion for leave to appeal citing that the required exigent circumstances did not exist to justify such a motion. The Pacificorp Entities have appealed that decision to the United States Court of Appeals for the Sixth Circuit.

Agreement along with the Chapter 11 bankruptcy petition;

2) Big Rivers failure to appeal, and request a stay, of the bankruptcy court's auction order;

3) Big Rivers filing of a plan of reorganization that did not incorporate the Omnibus Agreement; and

4) Big Rivers violated the No Shop Clause by negotiating with third parties.

[DN 3 p 17].

Objections were filed to these claims. The Bankruptcy court sustained the objections and disallowed both claims. [Record on Appeal No. 124]. From this decision, the Pacificorp Entities filed a timely notice of appeal to this Court.

### STANDARD OF REVIEW

The district court sits as a court of appellate review for decisions of the bankruptcy court. 28 U.S.C. § 158(a). "The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders and decrees ... of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." *Id.* The findings of fact of the bankruptcy court are reviewed under the clearly erroneous standard. FED.R.BANKR. 8013. The district court, however, gives "plenary review to questions of law." *Wesbanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.)*, 106 F.3d 1255, 1259 (6th Cir.), *cert. denied sub nom., Wesbanco Bank Barnesville v. Customer Creditors,* — U.S. ——, 118 S.Ct. 65, 139 L.Ed.2d 27 (1997); *Michigan Nat'l Bank v. Charfoos (In re Charfoos)*, 979 F.2d 390, 392 (6th Cir.1992); *see National Mortgage Co. v. Brengettcy*, 223 B.R. 684, 689 (W.D.Tenn. 1998) ("[B]ankruptcy court's findings of fact shall not be set aside unless those findings are 'clearly erroneous.' ... Questions of law, however, are reviewed de novo.").

### DISCUSSION

A. *Claim No. 133—Claim for Administrative Expense Pursuant to 11 U.S.C. § 503(b)(3) & (4)*

PPM claims the bankruptcy court erred in disallowing its claim for administrative expenses. PPM contends its efforts fostered and enhanced the Big Rivers estate. PPM argues the bankruptcy court erroneously lumped "together efforts by the PacifiCorp Entities that directly fostered and enhanced the progress of Big Rivers' reorganization with subsequent efforts by the PacifiCorp Entities to protect their own business interests." [DN 3 p 9]. Simply because an entity pursued its own self interest, it is not barred from recovering its costs as an administrative expense. Therefore, PPM argues it is not precluded from receiving an award for its administrative expenses.

Big Rivers, however, contends quite the opposite. Big Rivers argues the administrative expenses cannot be allowed because they were incurred by the Pacificorp Entities in pursuing their own self interest; that no causal connection exists between the enhanced value of the estate and the Pacificorp Entities actions; that the expenses and fees were incurred pre-petition; and finally, PKEC, which actually incurred the expenses and fees, is not an entity entitled to recover administrative expenses under § 503(b)(3). Furthermore, LG & E argues that the Pacificorp Entities cannot recover their costs as an administrative expense because their actions failed to foster and enhance or substantially contribute to the bankruptcy estate.

11 U.S.C. § 503 sets forth the criteria for which the bankruptcy court may allow payments as an administrative expense. The Pacificorp Entities sought to recover payment for their activities under § 503(b)(3)(D) and (4). § 503(b)(3)(D) provides that the bankruptcy court may award:

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

. . .

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title.

11 U.S.C. § 503(b)(3)(D). Subsection 4 of § 503(b) allows for recovery of

reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

11 U.S.C. § 503(b)(4). Thus, these two statutory sections allow the bankruptcy court to award payment to a party for their professional and other expenses incurred in making a substantial contribution to the chapter 11 case.

■ The term substantial contribution means that the contributions to the bankruptcy case must "foster and enhance, rather than retard or interrupt the progress of reorganization." *Hall Fin. Group v. DP Partners, Ltd. Partnership (In re DP Partnership)*, 106 F.3d 667, 672, (5th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 63, 139 L.Ed.2d 26 (1997); *Lebron v. Mechem Fin. Inc.*, 27 F.3d. 937, 944 (3rd Cir.1994); *In re Ace Fin. Co.*, 69 B.R. 827, 829 (Bankr.N.D.Ohio 1987); *In re Richton Int'l Corp.*, 15 B.R. 854, 856 (Bankr. S.D.N.Y.1981). The test for determining if a party made a substantial contribution to the case focuses on whether the actions and efforts of the applicant "resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." *Lebron*, 27 F.3d at 944; *Haskins v. United States (In re Lister)*, 846 F.2d 55, 57 (10th Cir.1988); *see also In re Ace Finance*, 69 B.R. at 830; *In re Rockwood Computer Corp.*, 61 B.R. 961, 965 (Bankr.S.D.Ohio 1986). Courts addressing this issue note that the term substantial accommodates the section's twin goals of encouraging meaningful participation in the bankruptcy process while keeping fees and expenses minimal to maximize the estate for the creditors. *Lebron*, 27 F.3d at 944; *In re 9085 E. Mineral Office Bldg. Ltd.*, 119 B.R. 246, 250 (Bankr.D.Colo.1990); *In re Baldwin–United Corp.*, 79 B.R. 321, 338 (Bankr.S.D.Ohio 1987).

■ The courts analyzing an award for administrative expenses usually engage in a two part inquiry. *In re Geriatrics Nursing Home, Inc.*, 195 B.R. 34, 37 (Bankr. D.N.J.1996); *In re Baldwin–United*, 79 B.R. at 338. First, the court looks to whether the benefit was rendered solely for the party's individual self interest or for the benefit of the estate. *In re Baldwin–United*, 79 B.R. at 338. Secondly, the court must determine whether the party's action conferred a direct, substantial, or meaningful benefit to the bankruptcy estate. *Id.*

Before reaching the merits of this appeal, the Court needs to address an argument advanced by the Pacificorp Entities relating to the issues which were before the bankruptcy court. In their reply brief [DN 8], the Pacificorp Entities contend that Big Rivers' and LG & E's arguments that the Pacificorp actions did not result in a demonstrable benefit to the estate or lead to an enhancement of the reorganization are premature. They claim that the only issue before the bankruptcy court was whether the self-interest of the Pacificorp Entities resulted in a per se bar on its substantial contribution claim.

The bankruptcy court never specifically decided whether self-interest is a bar to a substantial contribution claim. Instead,

the bankruptcy court found that "[e]ven under the law most favorable to PPM, *In re DP Partners, Ltd.*, 106 F.3d 667 (5th Cir.1997), PPM is not entitled to an administrative claim, as this Court holds that *none* of the efforts of PPM or any other [Pacificorp] Entities enhanced in any way the reorganization of the [Big Rivers] estate." [Record on Appeal No. 123 p 26] (emphasis in original). The bankruptcy court cited that the Pacificorp Entities attempted to prevent, rather than encourage, Big Rivers from attaining the highest and best value for its assets through the No Shop Provision in the Omnibus Agreement and various other actions. The Pacificorp Entities argue that if it is not per se barred from pursuing a substantial contribution claim because of its self-interest, then the case must be remanded for further consideration of the facts.

The Court has reviewed the record and the arguments made before the bankruptcy court.[2] The stipulation establishing the procedure to be used in addressing the objections stated that the bankruptcy court would review the substantial contribution question under the summary judgment standard set forth in Federal Rule of Civil Procedure 56(c), which is made applicable to the bankruptcy proceedings under Bankruptcy Rule 7056. FED.R.BANKR.P. 7056; [Record on Appeal No. 101, Stipulation and Order Establishing Bar Date and Certain Procedures Relating to Possible Claims of Pacificorp Entities, p 4]. The Pacificorp Entities failed to point to any disputed factual issues at that time. It fails to point to any disputed factual issues now, except to argue that the bankruptcy court was wrong in concluding that its efforts did not enhance the reorganization of Big Rivers. The bankruptcy court obviously saw no need to conduct an evidentiary hearing to allow evidence on issues which were not in dispute. The only disputed issue (did Pacificorp Entities efforts enhance the reorganization) is the ultimate issue in the case. The bankruptcy court, as the trier of fact, did not need to listen to testimony from witnesses who would testify that claimant's efforts did or did not enhance the reorganization. The court could draw that conclusion from the undisputed facts. The bankruptcy court determined that the estate gained no benefit from any of the efforts of the Pacificorp Entities and the task of this Court is to determine if that factual determination is clearly erroneous.

I. *Self–Interest*

Although the bankruptcy court did not directly decide whether self-interest is a complete bar to a substantial contribution claim or whether it is irrelevant, the Court will. First, the Court rejects the argument that self-interest is a complete bar to such a claim. The Circuit Courts are split on the role the party's self-interest plays in allocating administrative expenses. The Third and Tenth Circuits hold that, a party acting in his or her own self interest is not barred from seeking administrative expenses, but it is a factor to consider in determining if a substantial contribution was made. *Lebron v. Mechem Fin. Inc.* 27 F.3d 937, 944 (3rd Cir.1994); *Haskins v. United States (In re Lister)*, 846 F.2d 55, 57 (10th Cir.1988). For the party to make a substantial contribution to the case, actions taken to protect his or her self-interest must do more than incidentally benefit the bankruptcy estate. *Lebron*, 27 F.3d at 944, *see also In re Lister*, 846 F.2d at 57 ("Efforts undertaken by a creditor solely to further his own self-interest,

---

**2.** The Court notes that Pacificorp's argument before the bankruptcy court was not limited to the legal issue of whether self-interest is a per se bar to a substantial contribution claim. Pacificorp also claimed that under the facts of the case, it was entitled to recover on its claim. In fact, Pacificorp takes the same approach here, "Regardless of whether this Court follows the approach of the Third and Tenth Circuits ... or follows the subsequent analysis of the Fifth Circuit ... it should conclude that PPM is entitled to recover its fees and expenses for substantially contributing to the progress of reorganization." [DN 3, Opening Brief of Appellants, p 11].

however, will not be compensable, notwithstanding any incidental benefit accruing to the bankruptcy estate."). Thus, " 'substantial contribution' should be applied in a manner that excludes reimbursement in connection with activities of creditors and other interested parties which are designed primarily to serve their own interests and which, accordingly, would have been undertaken absent an expectation of reimbursement from the estate." *Lebron,* 27 F.3d at 944. To recoup costs as an administrative expense, the creditor must prove his or her actions transcended self protection. *Id.* Therefore, these circuits hold that a party's own self motivation is a factor in determining whether to award a claim for administrative expenses.

The Fifth Circuit, however, recently held the party's self-interest irrelevant in determining whether a party made a substantial contribution to the bankruptcy case so as to permit an award of administrative expenses. *Hall Financial Group Inc. v. DP Partners, Ltd. Partnership (In re DP Partners Ltd. Partnership),* 106 F.3d 667, 673 (5th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 63, 139 L.Ed.2d 26 (1997); *see also Milo Butterfinger's Inc.,* 218 B.R. 856 (Bankr.N.D.Tex.), *aff'd* No. Civ.A.3–98–CV–0507–P, 1998 WL 292371 (N.D.Tex. May 21, 1998). The court opined that the bankruptcy code fails to "require a self-deprecating, altruistic intent as a prerequisite to recovery of fees and expenses under section 503." *In re DP Partners,* 106 F.3d at 673. The court held that the only consideration in determining administrative expenses is whether the contribution is "considerable in amount, value, or worth." *Id.* The court

deferred to a case-by-case analysis for determining a substantial contribution standard, but stated at a minimum, the court should weigh the costs of the claimed fees and expenses against the benefits conferred upon the estate. *Id.*

No Sixth Circuit opinion has addressed the application of a party's self motivation in seeking a claim as an administrative expense.[3] Several bankruptcy courts within the Sixth Circuit have denied claims for administrative expenses on the ground the party undertook such actions only to further his or her own self-interests. *See In re Gillette Associates, Ltd.,* 101 B.R. 866, 881 (Bankr.N.D.Ohio 1989); *In re Ace Fin. Co.,* 69 B.R. 827, 829 n. 1, 830 (Bankr. N.D.Ohio 1987); *In re Rockwood Computer Corp.,* 61 B.R. 961, 965 (Bankr.S.D.Ohio 1986); *see also Wolf Creek Collieries Co. v. GEX Kentucky Inc.,* 127 B.R. 374, 380 (N.D.Ohio 1991) (applying analysis of the self-motivation of claimant found under § 503(b)(3) into requirement for substantial benefit to estate under § 503(b)(1)(A)).

■ This Court believes a party's self-interest is a factor to consider in the determining whether the party made a substantial contribution to the estate. Economics dictate that a creditor in a bankruptcy proceeding performs every action with his or her own self-interests in mind. *Haskins v. United States (In re Lister),* 846 F.2d 55, 57 (10th Cir.1988); *In re Public Serv. Co. of New Hampshire,* 160 B.R. 404, 452 (Bankr.D.N.H.1993). As noted by the Third Circuit, creditors are presumed to act in their own self interest and must satisfy the court that their efforts have transcended self-protection to

---

**3.** The Pacificorp Entities argued the Court should give expansive meaning to § 503(b) as did the Sixth Circuit in *In re George Worthington Co.,* 921 F.2d 626 (6th Cir.1990). In this case, the Sixth Circuit held an official unsecured creditors committee could recover its expenses under § 503(b)(1)(A) even though no statutory language expressly authorized such an award. The Court analyzed § 503(b)(3)(D) stating that section's language does not prohibit an official creditors committee appoint-

ed under § 1102 from recovering its expenses. The Court went on and gave an expansive reading of § 503(b) and § 503(b)(1)(A). This expansive reading, however, applies to who may recover administrative expenses under § 503(b) and not when or what the party may recover. Thus, this case does not support the proposition that the Sixth Circuit would give an expansive reading to when or what a party may recover as an administrative expense.

recover administrative expenses. *Lebron*, 27 F.3d at 944. Allowing a creditor to recover expenses for actions designed solely to benefit himself or herself that also tangentially or incidentally benefit the estate would circumvent the goal § 503(b)(3)'s goal of maximizing the amount of the bankruptcy estate for the creditors. A creditor who engages in such self motivated activity should be the one who pays for the corresponding costs. *See generally, In re Lister*, 846 F.2d at 57; *Pierson & Gaylen v. Creel & Atwood (In re Consolidated Bancshares Inc.)*, 785 F.2d 1249, 1253 (5th Cir.1986) (discussing in dicta that a creditor's attorney must ordinarily look to his or her client for payment, unless the services were rendered on behalf of the reorganization.); *Colorado Mountain Express Inc. v. Aspen Limousine Serv., Inc. (In re Aspen Limousine Serv. Inc.)*, 193 B.R. 325, 336 (D.Colo.1996) (holding creditor's claim for attorney fees incurred in efforts to purchase debtors stock should be born by the creditor); *In re S.N.A. Nut Co.*, 186 B.R. 98, 106 (Bankr.N.D.Ill.1995) (holding the cost of bidders at an auction should bear the expenses of investigating the debtor, not the bankruptcy estate).

▮ Thus, to the extent that the bankruptcy court considered the self-interest of the Pacificorp Entities, it did not err. The Court has reviewed the record and concludes that Pacificorp Entities were clearly motivated by their own self-interested business purposes in engaging in such actions. Their actions were designed solely to increase the economic position of PKEC, a PPM subsidiary corporation, and lacked any motivation to benefit or increase the bankruptcy estate. The Pacificorp Entities failed to show that their ac-

tions transcended their own self-interest, thus, their claims for administrative expenses were properly disallowed.

## II. *Direct Benefit to the Estate*

The bankruptcy court's decision relative to the substantial contribution claim was based on its conclusion that the Pacificorp Entities actions provided no direct benefit to the estate.[4] The bankruptcy court specifically held that "*none* of the efforts of PPM or any other [Pacificorp] Entities enhanced in any way the reorganization of the [Big Rivers] estate." [Record on Appeal No. 123 p 26] (emphasis in original). The Pacificorp Entities argue that the bankruptcy court erred in reaching this conclusion. More specifically, the Pacificorp Entities cite the bankruptcy court's use of the Omnibus Agreement between Big Rivers and PKEC as the basis for the auction and the court's grant of a $10 million dollar advantage to PKEC in the bidding process reveal the Pacificorp Entities made a substantial contribution to the bankruptcy estate. They further argue that the bankruptcy court erred in focusing on the actions of the Pacificorp Entities after the auction order, a period for which they *do not seek any administrative* expenses. Thus, they argue the bankruptcy court should only focus on the benefit to the estate during the time period directly relating to the cost they seek as an administrative expense.

▮ This Court finds unpersuasive the Pacificorp Entities attempt to separate its actions into two categories-those before the auction order and those after. In determining whether the party made a substantial contribution to the estate, the bankruptcy court may consider the actions for which the party seeks an administra-

4. Big Rivers further argues that PPM lacks standing to state a claim for administrative expenses because PPM paid the expenses that actually were incurred by PKEC, a party who is not a creditor. PPM, in it reply brief, explained that it paid and incurred the expenses associated with the Omnibus Agreement and that PKEC was the entity formed solely for the purpose of holding Big Rivers' assets. The bankruptcy court's opinion did not address this issue. Likewise, the Court need not consider this issue in light of the finding that the actions of PPM did not render a direct benefit to the Big Rivers' bankruptcy estate.

tive expense as well as other actions for which no compensation is sought. *In re Granite Partners, L.P.*, 213 B.R. 440, 446 (Bankr.S.D.N.Y.1997); *In re Baldwin–United Corp.*, 79 B.R. 321, 339 (Bankr. S.D.Ohio 1987). The bankruptcy court in *In re Baldwin–United*, dealt with an administrative expense claim of an indenture trustee who played a leadership role in representing debenture holders. The trustee, however, usually lead the charge against the Debtors. The court noted that from the beginning, the trustee "embarked on a campaign to fight its way out of these cases, and to do so as quickly as possible regardless of the consequences to the Debtors or their reorganization efforts." *In re Baldwin–United*, 79 B.R. at 339. The court refused to ignore such action which cost the Debtor's estate thousands of dollars in fees and expenses, even though such action did not relate to the expenses for which the trustee sought as an administrative expense.

■ Thus, the bankruptcy court properly considered Pacificorp Entities' motion to withdraw the reference, the motion for recusal of the bankruptcy judge and removal and sanction of the examiner, the motion for writ of mandamus from the district court ordering the judge to recuse himself, and the appeal of the confirmation of the amended plan of reorganization in determining whether PPM or PKEC made a substantial contribution to the Big Rivers bankruptcy estate. The bankruptcy court properly concluded these actions show that the Pacificorp Entities "worked long and hard to *prevent* the Debtor from marketing its assets and obtaining the highest value for the creditors and other parties in interest." [Record on Appeal No. 123 p 26] (emphasis in original). Additionally, this Court notes the harm the Pacificorp Entities brought to the estate by its insistence on the "No Shop Clause" in the Omnibus Agreement. This provision forced Big Rivers to reject a competing proposal from LG & E that would have brought the estate and creditors an additional $37,000,000 to $57,000,000.

The Pacificorp Entities' argument that the bankruptcy court implicitly recognized it made a substantial contribution to the bankruptcy estate by basing the auction process on the Omnibus Agreement and granting PKEC a $10 million cushion in the auction process is equally without merit. The bankruptcy court explained the rational behind the bidding process in its Memorandum Opinion denying Pacificorp Entities Claims No. 133 and 135 by stating:

> The Court's bidding process was designed to give any interested party a short period of time to complete its due diligence in order to make a competing bid for the Debtor's assets. Each bidder was required, as a condition of participating in the bidding, to agree to complete the PKEC Plan in the event PKEC terminated the Agreement or otherwise refused to complete the PKEC Plan. This process insured [Big Rivers], as well as its creditors and interest holders, of obtaining a deal at least equal to the PKEC Plan.

> Finally, in the belief that PKEC should have some protection, this Court required all bids for the Debtor's assets to exceed the PKEC Plan by at least $10,000,000.00.

[Record on Appeal No. 123 p 8–9]. The Pacificorp Entities, in effect, forced the bankruptcy court to enter the auction order based upon the Omnibus Agreement by its refusal to extend the May 31, 1997 termination date of the agreement. The bankruptcy court ordered the auction in February of 1997 which left little time to entertain alternative offers involving complex transactions or provisions. The bankruptcy court ordered the auction in this manner to avoid allowing the bird in the hand to fly free. The cushion was essentially given out of fairness to Pacificorp, not in recognition of any benefit it had bestowed upon the estate, but in recogni-

tion of its undesired role as a "stalking horse."

While some of Pacificorp Entities actions may have had a benefit on the estate, such benefit cannot be said to be direct, substantial and meaningful. Furthermore, any benefit is overshadowed by the costs associated with Pacificorp Entities' attempts to interrupt and delay the bankruptcy proceedings through the "No Shop Clause," endless motions and appeals to recuse the judge and examiner and an unwillingness to extend the termination date of the Omnibus Agreement. All these actions placed a significant strain on the bankruptcy estate. It cannot be said that the Pacificorp Entities's actions "foster and enhance, rather than retard or interrupt the progress of reorganization." *Hall Financial Group v. DP Partners, Ltd. Partnership (In re DP Partnership)*, 106 F.3d 667, 672, (5th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 63, 139 L.Ed.2d 26 (1997); *Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 944 (3rd Cir.1994); *In re Ace Fin. Co.*, 69 B.R. 827, 829 (Bankr. N.D.Ohio 1987); *In re Richton Int'l Corp.*, 15 B.R. 854, 856 (Bankr.S.D.N.Y.1981). Thus, the bankruptcy court did not err in disallowing PPM's claim Number 133 for administrative expenses because no direct benefit flowed to the bankruptcy estate.

*B. Claim No. 135—Claim for Benefit of Bargain under the Omnibus Agreement*

The bankruptcy court disallowed PKEC's claim for the loss of its benefit of the bargain under the Omnibus Agreement. The bankruptcy court held that the Omnibus Agreement was not an executory contract under 11 U.S.C. § 365 because both parties' performance was conditional on the approval of the bankruptcy court. Furthermore, the bankruptcy court opined that Big Rivers had no obligation under the Agreement until the court approved the transaction. Both parties were relieved of their obligations under the contract for failure of a condition precedent.

Lastly, the bankruptcy court held that the Omnibus Agreement void as a violation of public policy. The bankruptcy court ruled that the No Shop clause interfered with the debtor's fiduciary obligation to maximize the estate's value for the creditors by preventing Big Rivers from entertaining alternative offers.

The Pacificorp Entities claim that Big Rivers breached the Omnibus Agreement by failing to use reasonable efforts to see that the conditions and other obligations state therein were met and by negotiating with third parties in violation of the No Shop Provision. The Pacificorp Entities contend that Big Rivers' breach prevents it from seeking shelter under the theory that an unmet condition precedent can excuse its performance. Thus, it is argued that the bankruptcy court erred in concluding that the failure of the condition precedent requiring bankruptcy court's approval of the Omnibus Agreement excused Big Rivers' performance. Furthermore, the Pacificorp Entities argue that the No Shop provision did not force Big Rivers to violate its fiduciary duties. In support of their argument, the Pacificorp Entities cite that the bankruptcy court never expressly ruled that Big Rivers violated its fiduciary duties, and absent such a ruling, the bankruptcy court erred in concluding that the Omnibus Agreement was void. The Pacificorp Entities argue it was inconsistent for the bankruptcy court to base the auction order on a contract it later found illegal.

This Court believes that the bankruptcy court properly found the Omnibus Agreement void as a violation of public policy. A debtor-in-possession owes a fiduciary duty to maximize the value of the estate to all its creditors. *Four B. Corp. v. Food Barn Stores Inc. (In re Food Barn Stores)*, 107 F.3d 558, 564–65 (8th Cir.1997); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3rd Cir.1996); *Metropolitan Airports Comm'n v. Northwest Airlines Inc. (In re Midway Airlines Inc.)*, 6 F.3d 492, 494 (7th Cir.1993); *In re Wintex*, 158 B.R. 540, 543 (D.Mass.1992);

*Cello Bag Co. v. Champion Int'l Corp. (In re Atlanta Packaging Prod. Inc.)*, 99 B.R. 124, 131 (Bankr.N.D.Ga.1988). In fact, "[w]hen a debtor desires to sell an asset, its main responsibility, and the primary concern of the bankruptcy court, is the maximization of the value of the asset sold." *In re Embrace Sys. Corp.*, 178 B.R. 112, 123 (Bankr.W.D.Mich.1995) (quoting *In re Integrated Resources Inc.*, 135 B.R. 746, 750 (Bankr.S.D.N.Y.), *aff'd* 147 B.R. 650 (S.D.N.Y.1992), *appeal dismissed,* 3 F.3d 49 (2nd Cir.1993)). This duty to maximize the estate often trumps other duties the debtor may owe to individual creditors or third parties. *In re Wintex*, 158 B.R. at 543 (holding duty of debtor to act in good faith and fair dealing in furthering contract was limited by debtors obligation to maximize value for its creditors). Thus, Big Rivers, as a debtor-in-possession, owes a fiduciary duty to all its creditors to maximize the value of the estate.

As the bankruptcy court found, the No Shop Clause interferes with Big Rivers fiduciary duty. This provision prohibited Big Rivers from initiating, soliciting, or negotiating offers and proposals for the sale or lease of its assets. Thus, Big Rivers could not entertain any competing offer that may bring a higher price for its assets without breaching the Omnibus Agreement.

After a thorough review of the case law, no decisions appear to exist concerning the enforceability of contract containing a similar No Shop Clause. A few opinions do hold valid certain contracts with the debtor regarding the purchase of its assets that also provide for break-up fees and window shopping clauses. *Consumer News and Business Channel Partnership v. Financial News Network Inc. (In re Financial News Network Inc.)*, 980 F.2d 165 (2nd Cir.1992); *In re Integrated Resources Inc.*, 135 B.R. 746 (Bankr. S.D.N.Y.), *aff'd* 147 B.R. 650 (S.D.N.Y. 1992), *appeal dismissed,* 3 F.3d 49 (2nd Cir.1993); *In re Crowthers McCall Pattern Inc.*, 114 B.R. 877 (Bankr.S.D.N.Y.1990);

see generally C.R. Bowles & John Egan, *The Sale of the Century or a Fraud on the Creditors?: The Fiduciary Duty of Trustees and Debtors in Possession Relating to the "Sale" of a Debtor's Assets in Bankruptcy* 28 U.Memp.L.Rev. 789, 819–828; *but see In re Bidermann Indus. U.S.A. Inc.*, 203 B.R. 547 (Bankr.S.D.N.Y. 1997). A window shopping clause allows a debtor to fulfill its fiduciary obligation by permitting third parties submitting a higher competing offer to perform its due diligence, but such competing offers must be made without any dialogue with the debtor. *In re Bidermann*, 203 B.R. at 552.

However, in *In re Bidermann*, the bankruptcy court disapproved a contract containing a window shopping agreement. Bidermann Industries U.S.A. (hereinafter Bidermann) filed for Chapter 11 relief and hired a turnaround consultant to rejuvenate its business. Bidermann sought bankruptcy court approval of a letter agreement that would initiate a leveraged buyout of the debtor by the consultants and a third party. The agreement contained a clause preventing the debtor from soliciting, initiating or encouraging

> the submission of any inquiries, proposals or offers from other potential bidders and [from furnishing] any such persons with any information which might lead to a competing inquiry, proposal or offer, except that the debtors shall allow the proponent of a competing offer containing a superior purchase price to conduct due diligence.

*Id.* at 550. The *Bidermann* bankruptcy court denied the motion to approve the letter agreement. Among other factors, the court noted that the window shop provision stifled bidding, instead of promoting it. *Id.* at 552–53. The sale process "should have followed an intensive effort to drum up the best price obtainable for the creditors. Instead, the process aims to cut off other possible sales." *Id.* at 552. The court especially noted that this case differed from the other decisions allowing such window shopping provisions because

the debtor had not extensively marketed its assets prior to entering into the sales agreement. *Id.* 553.

Thus, the *Bidermann* decision reveals the disfavor and potential problems with such window shopping provisions in the bankruptcy context when the debtor fails to extensively market its assets. In the present case, similar problems exist with the No Shop Clause contained in the Omnibus Agreement. The Omnibus Agreement strictly prohibits Big Rivers from negotiating with any party offering a competing proposal to purchase or lease its assets. This prohibition violates the underlying policy of the Bankruptcy Code to maximize the value of the estate for the creditors by stifling the bidding process for the assets of the debtor. The No Shop Clause places Big Rivers in a position of rejecting subsequent proposals to purchase its assets for a greater amount, thereby breaching its duty to the estate. This Court particularly notes that this No–Shop Clause completely locked up the debtor by preventing communication with any third party submitting a bid, whether that bid was higher or lower. Unlike the window shopping provisions in the above mentioned cases, such a condition provides no room for the debtor to fulfill its fiduciary obligation. Under the law, a contract containing such a clause which prevents a party from fulfilling his or her fiduciary duty is void as a violation of public policy. *Kessler v. Jefferson Storage Corp.*, 125 F.2d 108, 110 (6th Cir.1941) (holding a contract entered between corporation and third party void because third party agreed to a pay portion of the profits on such contract to corporation's president). Thus, the bankruptcy court did not err in holding the Omnibus Agreement void as against public policy.

The Pacificorp Entities argue that such a decision is inconsistent with other actions of the bankruptcy court—namely, the auction order required each bidder to commit "to all terms, including rates, identical to the agreement and plan of reorganization negotiated between PKEC and [Big Rivers]." [DN 3 p 29 quoting February 21, 1997 Order Establishing Bidding Process and Enhanced Value) (*see* Record on Appeal No. 123 Attachment C p 8]. This Court, however, is not persuaded by this argument. No evidence in the record indicates that the lease transaction between LG & E and Big Rivers, which was ultimately approved by the bankruptcy court, contained a similar No Shop Provision. The intent of the auction order was to require any potential bidder to accept the material terms of the Omnibus Agreement. The No Shop Clause was obviously one clause the bankruptcy court did not wish to have included.

Furthermore, the Pacificorp Entities argue that the bankruptcy court placed the cart before the horse by declaring the contract void because it caused Big Rivers to violate its fiduciary duties without specifically finding that Big Rivers in fact breached its fiduciary duties.[5] The bankruptcy court did not have to find that Big Rivers actually violated its fiduciary duty to find that the Omnibus agreement void on public policy grounds. Such an inquiry is separate and distinct from the issue of the validity of the contract. As the Bankruptcy court noted, the issue of whether Big Rivers breached its fiduciary duty was never raised. The answer to this question would not affect the decision that the con-

---

**5.** While the bankruptcy court never specifically ruled on the issue of whether Big Rivers breached its fiduciary duty, the bankruptcy court's opinion strongly suggests no such breach occurred. The bankruptcy court explained

> [w]hile this court may question whether the Agreement was actually the best deal for [Big Rivers], it does not question the good

faith of [Big Rivers] or its professionals in determining that the Agreement, even with the No–Shop Clause, was in the best interest of [Big Rivers]. When faced with the economic pressures on [Big Rivers] it is easy to understand why it would accept the PKEC "bird in the hand" rather than enter the Chapter 11 wilderness without a deal. [Record on Appeal No. 123 p 21].

tract violated the public policy of requiring a debtor-in-possession to maximize the value of the estate. The important factor is that the No Shop Clause prevented Big Rivers from entertaining offers and notifying the bankruptcy court of such offers that could increase the size of the debtors assets.

Because this Court finds that the Omnibus Agreement unenforceable as a violation of public policy, this Court does not need to consider the remaining claims of error.

## CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court disallowing the Pacificorp Entities Claim Number 133 for Administrative Expenses and Claim Number 135 for the Benefit of the Bargain on the Omnibus Agreement is affirmed.