**In re SERVICE MERCHANDISE COMPANY, INC., et al.,
Debtor.**

**No. 399–02649.**

United States Bankruptcy Court,
M.D. Tennessee.

Oct. 12, 1999.

See also 256 B.R. 744, 256 B.R. 755.

**740**

John William Butler, Jr., George N. Panagakis, Skadden, Arps, Slate Meagher & Flom, Chicago, IL, Paul G. Jennings, Beth A. Dunning, Bass, Berry & Sims PLC, Nashville, TN, for debtors.

Ellen B. Vergos, United States Trustee, Region 8, Memphis, TN, Beth Roberts Derrick, Assistant United States Trustee, Nashville, TN, for Office of the United States Trustee.

Glen B. Rose, Barbara Holmes, Harwell Howard Hyne Gabbert & Manner, P.C., Nashville, TN, Glen B. Rice, Otterbourg, Steindler, Houston & Rosen, New York City, for Official Unsecured Creditors' Committee.

## MEMORANDUM

GEORGE C. PAINE, II, Chief Judge.

This matter is before the court upon the contested fee applications of Otterbourg, Steindler, Houston & Rosen, P.C. and Ernst & Young, LLP, ("Professionals") professionals to the Official Committee of Unsecured Creditors ("CUC"). Although the amounts sought by the professionals are not directly challenged, the United States Trustee ("U.S. Trustee") has objected to compensation and expenses sought by the professionals for the period from the date of the voluntary petition to the to the date of the order approving the ap-

pointment of the CUC. The U.S. Trustee seeks denial of all fees and expenses for services performed prior to the appointment date of the CUC. The professionals argue that their appointment was *nunc pro tunc* to the petition date, and that even if the fees and expenses are not compensable pursuant to 11 U.S.C. § 330, they would be recoverable pursuant to 11 U.S.C. §§ 507(b)(3)(D) and (b)(4). For the reasons more particularly described herein, the court overrules the objections of the U.S. Trustee and awards the fees and expenses sought.

Otterbourg, Steindler, Houston & Rosen, P.C. are legal counsel to the CUC of Service Merchandise Company, Inc. and its affiliated debtors (collectively "Debtor"). Ernst & Young LLC are the accountants and financial advisors to the CUC of the debtor. Prior to the March 27, 1999 voluntary petition date, a group of creditors filed an involuntary petition against the debtor on March 15, 1999. Prior to and after that date, both professionals provided services to the group of unsecured creditors that for the most part, became the Official Committee of Unsecured Creditors. The U.S. Trustee has not objected to any specific time entry as unreasonable or excessive, but instead limits its particular objection to fees and expenses for services performed and expenses incurred between March 27, 1999 and April 7, 1999, the date of appointment of the CUC.

March 27, 1999 is the voluntary petition date. According to the U.S. Trustee, the professionals' applications seek compensation for services and reimbursement of expenses incurred prior to the appointment of the CUC. The U.S. Trustee argues that the professionals cannot be compensated and reimbursed for representation of a client, the CUC, that was not yet in existence. The CUC was not appointed until April 7, 1999. Specifically the Otterbourg firm seeks $48,941 in fees and $9,238,61 for expenses before the CUC was even formed. Likewise Ernst & Young seeks $6,917.50 in fees for this

same time period. The U.S. Trustee argues that under the provisions of the Code, the court may only award fees and expenses to professionals who are employed under §§ 327 or 1103. Implicit in the statutory language of the Code, according to the U.S. Trustee, is that a professional cannot be employed and cannot receive compensation for representing an entity prior to that entity's existence.

The professionals posit that the objections of the U.S. Trustee must fail for two reasons. First, the orders approving the employment of the professionals, which were not objected to by the U.S. Trustee, provide for their employment *nunc pro tunc* to the voluntary petition date (March 27, 1999); and secondly, even if the fees and expenses are not recoverable under § 330, they are recoverable as administrative expenses pursuant to §§ 503(b)(3)(D) and (b)(4). The court agrees with the petitioning professionals.

■■■ Section 330(a)(1) allows the court, after notice and a hearing, to award professionals employed pursuant to §§ 327 or 1103 reasonable compensation. Section 1103(a) allows a Committee to select and authorize the employment of attorneys, accountants or other agents to assist the Committee. It is undisputed that the professionals were chosen by the CUC to assist the committee in this case.

■■ The orders approving employment of the professionals both provided that the effective date of employment was March 27, 1999. No objections were raised to these orders. The orders provide that "the Official Committee of Unsecured Creditors is authorized to retain Otterbourg, Steindler, Houston & Rosen, P.C. as attorneys [and] Ernst & Young, LLP as accountants, consultants and financial advisors effective as of March 27, 1999." The court finds that the *nunc pro tunc* orders approving employment of the pro-

fessionals to March 27, 1999 provides a sufficient basis for the awarding of fees and expenses pursuant to § 330 for services performed and fees.

■■ Even assuming, however, that the court could not award fees and expenses under § 330 based on the U.S. Trustee's objection, the court finds that nonetheless the professionals have demonstrated that those fees and expenses are awardable pursuant to §§ 503(b)(3)(D) and (b)(4).[1] Section 503(b)(3) permits the court to approve the award of actual, necessary expenses, other than compensation and reimbursement specified in (b)(4) to a unofficial committee making a "substantial contribution" to a chapter 11 case. Moreover, section 503(b)(4) permits the allowance of reasonable compensation for professional services rendered by an attorney or accountant of an entity whose expense is allowable under (b)(3).

■■ A finding of entitlement under § 503(b)(3)(D) is a prerequisite to an allowance under § 503(b)(4). *In re American Preferred Prescription, Inc.*, 194 B.R. 721, 724 (Bankr.E.D.N.Y.1996). "Substantial contribution" is not a defined term in the Code, and there is no statutory instruction as to how this term is to be interpreted. However, the terms has been judicially interpreted to mean contributions to the bankruptcy that "foster and enhance, rather than retard or interrupt the progress of reorganization." *In re Big Rivers Electric Corp.*, 233 B.R. 739, 746 (W.D.Ky.1998) (quoting *Hall Fin. Group, Inc. v. DP Partners, Ltd. Partnership (In re DP Partnership)*, 106 F.3d 667, 672 (5th Cir.), *cert. denied,* 522 U.S. 815, 118 S.Ct. 63, 139 L.Ed.2d 26 (1997); *see also Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 944 (3rd Cir.1994); *In re Ace Fin. Co.*, 69 B.R. 827, 829 (Bankr.N.D.Ohio 1987); *In re Richton Int'l Corp.*, 15 B.R. 854, 856 (Bankr.

---

1. Section 503(b)(3) specifically excludes committees appointed under section 1102. If the United States Trustee's objection is that the committee had not yet been appointed under § 1102, then § 503(b)(3) specifically provides for the awarding of "actual and necessary" costs incurred by a committee that has not been appointed under § 1102.

S.D.N.Y.1981). An applicant must show that its efforts "resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." *Lebron,* 27 F.3d at 944; *Haskins v. United States (In re Lister),* 846 F.2d 55, 57 (10th Cir.1988); *see also In re Ace Finance,* 69 B.R. at 830; *In re Rockwood Computer Corp.,* 61 B.R. 961, 965 (Bankr.S.D.Ohio 1986). The court in *Big Rivers* noted that "the term 'substantial' accommodates the section's twin goals of encouraging meaningful participation in the bankruptcy process while keeping fees and expenses minimal to maximize the estate for the creditors." *Id.* at 746. *Lebron,* 27 F.3d at 944; *In re 9085 E. Mineral Office Bldg. Ltd.,* 119 B.R. 246, 250 (Bankr.D.Colo.1990); *In re Baldwin–United Corp.,* 79 B.R. 321, 338 (Bankr.S.D.Ohio 1987).

The court in *Big Rivers* discussed a two part inquiry utilized by courts to investigate the propriety of an administrative expense award: "First, the court looks to whether the benefit was rendered solely for the party's individual self interest or for the benefit of the estate. Secondly, the court must determine whether the party's action conferred a direct, substantial, or meaningful benefit to the bankruptcy estate. *In re Big Rivers Electric Corp.,* 233 B.R. at 746 (citations omitted). In the case before it, the court finds both prongs of the inquiry are easily met.

The services performed by these professionals were motivated both by self-interest and the estate's interests. The contents and descriptions of the work performed by both the Otterbourg firm and Ernest & Young is uncontested. The Otterbourg firm's application sets forth the following nonexhaustive list of services performed which benefitted the estate:

1. Extensive review of the debtor's $750 million pre and post petition financing facility with Citicorp, U.S.A., Inc., as agent, including an in-depth analysis of such lender's prepetition liens and possible causes of action against such lender, which analysis was concluded on an expedited basis, prior to June 7, 1999, as required by the Final Order Authorizing Debtors to Obtain and Incur Postpetition Financing.

2. Extensive review and input into the Debtor's employee retention and incentive programs covering approximately nine hundred employees and negotiation of the parameters of such program (including benchmarks upon which 1999 bonus payments will be made) based upon a thorough review and analysis of the Debtor's 1999 operating plan;

3. Negotiation of the terms upon which the Committee would agree to an extension of the Debtor's exclusive periods to file and solicit acceptances of a plan(s) of reorganization, to give the Debtor the time it stated it needs to stabilize its business, while also protecting the interests of creditors;

4. Extensive review in an expedited time frame of the Debtor's prepetition private label credit card program and its replacement private label credit card program to facilitate the Debtor's urgent need to have a private label credit card program in place by September 1999; and

5. Active participation in the Debtor's efforts to sell over one hundred leases and fees for closed stores, which the debtor believes will result in approximately $80 million in gross proceeds.

Application for First Interim Allowance of Compensation of Otterbourg, Steindler, Houston & Rosen, P.C., Counsel to the Official Committee of Unsecured Creditors, Docket No. 1504, at p. 3–4. Likewise, the Ernst & Young application lists some of the services performed that benefitted the estate:

1. Preparation for and participation in meetings and conference calls with the Committee and the Committee's counsel including preparation of E & Y reports.

2. Review and analysis of real estate issues including the development of a real estate database, comparative analysis of real estate bids, preparation for an attendance at real estate auction, calculation of potential lease rejection claims and other real estate disposition issues.

3. Review and analysis of the Debtors' Operating Plan including an in-depth analysis of the underlying assumptions behind the financial projections and numerous meetings with Debtors' management to discuss their role in the planning process.

4. Review and analysis of proposed employee severance, retention and bonus programs and a comparison to similar programs of other Chapter 11 companies as well as the development of counter proposals and participation in extensive negotiations to reach an agreement of the appropriate benchmarks and payouts.

5. Preparation for and participation in meetings and conference calls with the Debtors and the Debtors' representatives including numerous meetings with Debtors' management to discuss their role in the Business Planning process.

6. Review and analysis of current operating results including quarterly financial statements, monthly trustee reports and the Debtors' monthly operating reports.

7. Review and analysis of weekly gross sales, gross margin, inventory and availability information including the preparation of weekly flash report to the unsecured creditors.

8. Preparation of preliminary liquidation analysis to evaluate potential recoveries to unsecured creditors.

9. Review and analysis of reclamation claims including discussions with the Debtor and its advisors regarding testing methodology.

10. Review of documents including court filings, committee correspondence, Debtor contracts, and other correspondence to assist and advise the Committee regarding related issues.

First Application of Ernst & Young LLP as Accountants and Financial Advisors to the Official Committee of Unsecured Creditors, for the Allowance of Compensation for Services Rendered and for Reimbursement of Disbursements Incurred from March 27, 1999 through July 31, 1999, Docket No. 1512 (pages unnumbered). While certainly both professionals are benefitted financially by the work performed, there is no expectation that they work without compensation.

The second prong requires direct benefit to the estate. Both professionals have provided immeasurable benefits to this estate. The "air of cooperation" in a case of this size is rare, and the administrative costs saved by the synergy of the parties is significant. Hotly litigated issues and scorched earth policies would have generated even larger professional fees and expenses. There is no question that the services provided by both of these professionals, as set forth above, constitutes a substantial contribution, and furthermore that the estate has been the fortunate beneficiary of these invaluable services.

Accordingly, the court finds that pursuant to § 503(b)(3) and (b)(4), the professionals are entitled to recover their fees and expenses for the period between March 27, 1999 and April 7, 1999. The applications as presented to the court will be allowed in their entirety. The objections of the U.S. Trustee are hereby overruled.

It is, THEREFORE, so ordered.