**In re BIG RIVERS ELECTRIC CORPORATION, Debtor.**

**Long, Aldridge, & Norman, LLP, Appellant,**

v.

**Big Rivers Electric Corporation, Appellee.**

**No. 4:99CV–97–M.**

United States District Court,
W.D. Kentucky,
Owensboro Division.

Aug. 24, 2000.

See also 252 B.R. 676, 252 B.R. 670.

---

86. *Id.* at *5–*6.

Mark S. Kaufman, Laura F. Nix, Russell A. Tolley, Long, Aldridge & Norman, Atlanta, GA, for Long Aldridge & Norman LLP, appellants.

Michael A. Fiorella, Felicia S. Turner, Sullivan, Mountjoy, Stainback & Miller, P.S.C., Owensboro, GA, Mark S. Kaufman, Long, Aldridge & Norman, Atlanta, GA, for Big Rivers Electric Corporation and Chase Manhattan Bank, N.A., appellees.

## MEMORANDUM OPINION AND ORDER

McKINLEY, District Judge.

This matter is on appeal from the decision of the Bankruptcy Court, Honorable J. Wendell Roberts, Judge, reducing the fees of the Debtor's counsel. Having been fully briefed, this matter now stands ripe for decision. For the following reasons, the decision of the Bankruptcy Court is **reversed**.

### STATEMENT OF FACTS

Big Rivers Electric Corporation (Big Rivers) filed for Chapter 11 protection on September 25, 1996. It entered bankruptcy with approximately $1.2 billion in debt. Big Rivers principal constituencies consisted of the Rural Utilities Service (RUS), to which it owed $1.1 billion; the Bank of New York and Chase Manhattan Bank (collectively the banks), which held unsecured claims of $100 million; and Alcan Aluminum Corporation, NSA, Inc., the two largest consumers of Big Rivers' power. Big Rivers' plan of reorganization was approved in June of 1997 and became effective in July of 1998. All of Big Rivers creditors have received payments called for under the plan. While resolved in a short period of time, this bankruptcy case has produced a number of published decisions. Instead of reciting the facts again, the reader is referred to the facts as stated in those published opinions. *See In re Big Rivers Elec. Corp.*, 233 B.R. 768, 771–77 (Bankr.W.D.Ky.1999) (awarding fees to professionals); *In re Big Rivers Elec. Corp.*, 233 B.R. 754 (Bankr.W.D.Ky.1999) (awarding compensation to the examiner); *In re Big Rivers Elec. Corp.*, 233 B.R. 726, 728–33 (Bankr.W.D.Ky.), *aff'd* 233 B.R. 739, 742–45 (W.D.Ky.1998) (denying claim filed by prospective purchaser of Big Rivers); *In re Big Rivers Elec. Corp.*, 213 B.R. 962, 964–71 (Bankr.W.D.Ky.1997) (denying motion to disqualify bankruptcy judge and remove the examiner).

The law firm of Long, Aldridge, and Norman (LAN) represented Big Rivers throughout the bankruptcy proceedings. LAN filed a final fee application seeking $6,713,240.05 in fees and $536,726.63 in expenses for services rendered to Big Rivers during the bankruptcy. The Bankruptcy Court reduced the fees by $1,559,892.50 and expenses by $124,714.12 because those fees were attributable to the post-petition work performed by LAN on the PKEC transaction. The Bankruptcy Court stated that "Big Rivers' unflinching devotion to the PKEC agreement without question caused harm to the bankruptcy estate, not only in terms of the insufficient value that would have been achieved by the implementation of that agreement, but additionally by Big Rivers' lack of candor with the Court."[1] The Bankruptcy Court

---

1. The Bankruptcy Court accused Big Rivers and its professionals of a lack of candor with respect to the existence of the No Shop Clause. While not referred to specifically as the "No Shop Clause," it appears this clause is exactly what the Bankruptcy Court and Mr.

expressed its outrage by stating, "[n]ot only do the professionals seek payment for all work in promoting the void PKEC deal, they also want payment for opposing it in the many appeals to the District Court."[2] The Bankruptcy Court concluded that "Big Rivers' strenuous advocation of the PKEC agreement did not foster, enhance or benefit the reorganization process. To the contrary, it retarded, impeded and disrupted that process." See *In re Big Rivers Elec. Corp.*, 233 B.R. 768, 786–87 (Bankr. W.D.Ky.1999).

Ironically, these statements are from the same Court which previously wrote

> While this Court may question whether the Agreement was actually the best deal for [Big Rivers], it does not question the good faith of [Big Rivers] or its professionals in determining that the Agreement, even with the No–Shop Clause, was in the best interest of [Big Rivers]. When faced with the economic pressures on [Big Rivers], it is easy to understand why it would accept the PKEC "bird in a hand" rather than enter the Chapter 11 wilderness without a deal.

*In re Big Rivers Electric Corp.*, 233 B.R. 726, 736 (Bankr.W.D.Ky.1998) (finding PKEC agreement void as a matter of public policy).[3] In a related appeal, this Court has questioned what may have precipitated such a drastic change of opinion by the Bankruptcy Court, but it is still left to wonder. *In re Big Rivers Elec. Corp.*, 4:99CV–117–M. A court is certainly entitled to change its opinion, but what is troubling is the fact that Big Rivers' and its professionals had no notice or opportunity to defend themselves against the allegations that they breached their fiduciary duty; that they wasted millions of dollars pursuing a deal which provided no benefit to the estate; and that they were not candid with the Court.

When these issues came to head during the bankruptcy, Big Rivers' was prepared to prove to the Bankruptcy Court that the PKEC deal was the best deal and that they were fulfilling their fiduciary duty by pursuing it. However, Big Rivers was never allowed the opportunity to do that because the Bankruptcy Court decided to "impose its own solution." [R. 45 p. 3.]

■ Having imposed its own solution, the Bankruptcy Court "finally resolve[d] the questions surrounding the Debtor's fulfillment of its fiduciary duty to maximize the value of its assets." [R. 45 p. 3.] The issues were never raised again until the Bankruptcy Court raised them in resolving various fee applications. And even then the Bankruptcy Court did not allow proof on the matter. Thus, the record was never fully developed in this regard. LAN argues on appeal that the record does not support the findings and conclusions of the Bankruptcy Court and the Court agrees. Therefore, this matter is remanded for further proceedings on the fee application of LAN.

■ Upon remand, the Bankruptcy Court should allow LAN an opportunity to present evidence to justify its fee application and defend against those matters which the Court found so offensive to the reorganization process. The Court should develop the record so that its findings can be properly reviewed, if necessary. Fur-

Robison were discussing during the hearing on November 13, 1996. [R. 26 p. 190.]

**2.** One wonders what the Bankruptcy Court's reaction would have been had Big Rivers' professionals not defended against the PKEC appeal, which asserted a $25 million breach of contract claim against Big Rivers.

**3.** Judge Roberts, like Judge Stosberg, utilized this Court's opinion in the PKEC appeal as support for his conclusion that Big Rivers violated its fiduciary duty. This Court did not conclude in that appeal that Big Rivers violated its fiduciary duty, and in fact, noted in its opinion this paragraph which suggests that Judge Roberts was of the opinion that Big Rivers had not violated its duty by pursuing the PKEC deal. *In re Big Rivers Elec. Corp.*, 233 B.R. 739, 753–54 (W.D.Ky.1998).

thermore, the Bankruptcy Court is cautioned to guard against the "hindsight" factor when deciding the propriety of LAN's actions on behalf of Big Rivers. "What seems crystal clear and simple in hindsight when the reorganization is accomplished is seldom presented as such in the heat of battle." *In re Public Serv. Co. of N.H.*, 160 B.R. 404 (Bankr.D.N.H.1993).

## CONCLUSION

For the foregoing reasons, the decision of the Bankruptcy Court reducing the fees of Long, Aldridge, and Norman is **reversed** and **remanded** to the Bankruptcy Court for further proceedings consistent with this opinion.