

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-29-1994

# Lebron v. Mechem Financial, Inc.

Precedential or Non-Precedential:

Docket 93-3408

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

## Recommended Citation

"Lebron v. Mechem Financial, Inc." (1994). *1994 Decisions.* Paper 65.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/65

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


N0. 93-3408


MICHAEL Q. LEBRON; *MICHAEL C. LEBRON; ANTHONY LEBRON

v.

MECHEM FINANCIAL INC.; W. JAMES SCOTT, JR.;
ROBERT G. DWYER, Trustee

W. James Scott, Jr.,
Appellant

(*Per Clerk's 9/20/93 Order, amending the caption)


On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civil Action No. 93-00067E)


Argued March 1, 1994

BEFORE:  STAPLETON and SCIRICA, Circuit Judges, and
VAN ANTWERPEN, District Judge*

(Opinion Filed June 29, 1994)


James R. Walczak
John F. Mizner (Argued)
MacDONALD, ILLIG, JONES & BRITTON
100 State Street, Suite 700
Erie, PA 16507
Attorneys for Appellant

James E. Blackwood (Argued)
23 West 10th Street
Erie, PA 16501
Attorney for Appellees

*Honorable Franklin S. Van Antwerpen, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.


OPINION OF THE COURT


STAPLETON, Circuit Judge:


Pursuant to 11 U.S.C. §§ 503(b)(3) and (b)(4) (1988), the bankruptcy court awarded W. James Scott ("Scott"), a creditor and former officer and director of the debtor, Mechem Financial, Inc. ("Mechem"), reimbursement of expenses incurred in connection with activities that the court felt "substantial[ly] contributed" to Mechem's estate. Most of Scott's efforts were aimed at exposing the fact that Mechem's officers and directors were engaged in fraudulent activity. The bankruptcy court's award was appealed by three other creditors of the estate, Michael Q. Lebron, Michael C. Lebron, and Anthony Lebron ("the Lebrons"). The district court reversed, holding that some of Scott's expenses were incurred either before the chapter 11 petition was filed or after the case was converted to chapter 7, and that §§503(b)(3) and (b)(4) do not authorize recovery of expenses incurred during these periods. The district court further held that Scott could not recover the expenses he incurred while the chapter 11 proceedings were pending because he was acting solely for his own benefit, thus making any benefit to the estate purely incidental. Finally, the court held that the bankruptcy court's

award was inequitable because Scott was an insider in the corporation that was committing the fraud.  Scott appeals the judgment of the district court.  We will reverse and remand for further proceedings.

I.

Mechem was founded in 1986 to manage pre-need funeral trust funds for individuals and to provide these individuals with funeral goods and services to be paid for with the funds in trust.  The funds were advanced from the participating individuals to Mechem through funeral directors.  Scott was one of the three initial members of Mechem's board of directors as well as a minority shareholder.  In addition, Scott was a funeral director who had entrusted Mechem with funds under pre-need contracts executed by his customers.  A second board member, John R. Copple ("Copple"), served as the President of Mechem, and controlled the day-to-day operations of the corporation.  Soon after Mechem was organized, Scott began to sense that Copple was not disclosing to him information regarding Mechem financial matters and investments.  Then, in October 1987, Copple and the third member of the board of directors removed Scott as an officer and director of Mechem.

After his removal, Scott apparently made several requests of Copple for financial information about Mechem, but Copple refused these requests.  Therefore, in 1988, Scott filed a complaint in mandamus against Mechem in the Court of Common Pleas of Erie County, Pennsylvania, seeking to exercise his rights

under Pennsylvania law as a shareholder to examine Mechem's books.  During the discovery phase of this action, Scott became aware that Copple had misappropriated millions of dollars of pre-need funeral trust fund monies for personal use, much of which was used to purchase rare coins controlled by Copple.  In light of this information, Scott, in February 1990, filed a complaint in equity in the Court of Common Pleas of Erie County, Pennsylvania, against Mechem, its officers, directors, and majority shareholders, and certain holders of trust funds.  He sought appointment of a custodian to prevent further mismanagement and fraud, a complete and accurate accounting of the assets held by Mechem, an injunction against the disbursement or transfer of pre-need trust funds, and a declaration that certain issues and transfers of corporate stock were void.  Scott accompanied this complaint with an affidavit that detailed alleged acts of mismanagement and self-dealing by Copple in his capacity as president of Mechem.

According to the bankruptcy court, the walls began to close in on Copple at this point.  On March 6, 1990, a common pleas court ordered Mechem and, specifically, Copple, to file before March 12, 1990, inventories of all assets, investments, and accounts held by Mechem or Copple personally.  Because neither Mechem nor Copple filed a satisfactory inventory, Scott promptly moved to compel compliance with the court's order.  On March 19, 1990, the common pleas court entered an additional order directing Mechem and Copple to file by March 26, 1990, inventories and more detailed supporting information.

Copple reacted to the court's order by causing Mechem to file a chapter 11 petition on March 23, 1990. Scott immediately filed in the bankruptcy court for the appointment of a trustee, for an expedited accounting, and for partial relief from a stay. The bankruptcy court granted Scott's motion on March 28, 1990, and a trustee was appointed on that same day. Scott then gave the trustee all of the information that he had gathered during his pre-bankruptcy petition legal actions against Mechem and Copple. The bankruptcy court found that this information "contributed to the [t]rustee's report of investigation filed promptly with [the] Court on April 24, 1990 identifying various assets and summarizing the history of questionable financial transactions between [Mechem] and [Copple and affiliates and corporations under Copple's control.]" B.Op. at 6.

The trustee recommended that the proceedings be converted to chapter 7, which the bankruptcy court did on May 23, 1990. During the liquidation process, the trustee collected cash in the amount of $460,000. The trustee also brought numerous adversary proceedings against Copple and his wife, which resulted in the turnover of additional property to the estate. Finally, the trustee obtained a judgment against Copple for $4,009,645, and against Copple and his wife for $1,307,567. According to the trustee, unless the Copples successfully appeal these awards, another $400,000 to $700,000 will be collected upon the liquidation of their personal assets. Despite the collection and

liquidation efforts, the unsecured creditors of Mechem will incur losses.

Scott, pursuant to §§ 503(b)(3) and (b)(4), applied to the bankruptcy court for reimbursement of the expenses he had incurred in connection with the Mechem legal actions and his participation in the chapter 11 and chapter 7 proceedings. Specifically, Scott requested $48,805.12 as reimbursement for attorney fees and $10,207.88 as reimbursement for general expenses. These amounts represented expenses incurred before, during, and after Mechem entered the chapter 11 proceedings. The bankruptcy court awarded Scott his requested reimbursements in full. In justification of this award, the court made the following findings:

> The information gathered by Scott in his prosecution of matters against the Debtor was critical to the Court in making an immediate determination to appoint a Trustee and critical to the Trustee in making a prompt investigation and report to the Court which resulted in conversion of this case to Chapter 7. Scott's information also assisted the Trustee in the subsequent collection of assets for the benefit of creditors of the estate.

> Scott's efforts were more than just a passing benefit to the estate. The efforts of Scott were a substantial contribution in assisting the Trustee to carry out his responsibilities. Scott's efforts far exceeded those which he was obligated to perform. . . .

> . . . [T]he benefit Scott bestowed upon this estate is clear -- absent Scott's pursuit of this Debtor, the Debtor lead by Copple might still be fleecing individuals into investing in the Debtor's preneed trusts. Copple could still be diverting the

Debtor's assets to his own uses. There might be no estate for unsecured creditors.

. . . Most, if not all of the individual preneed trust purchasers, will receive the funeral that they anticipated and the unsecured creditors will receive some dividend from this estate. Without Scott's efforts, the result could have been much worse -- the Debtor could have continued to operate until all of the assets were dissipated.

We find that all of Scott's efforts for which he incurred fees and expenses both prepetition and postpetition resulted in a direct benefit and were a substantial contribution to the estate. Any fees and expenses which Scott incurred prepetition substantially contributed to the administration of the Debtor's estate postpetition. Thus, there is more than sufficient reason to reimburse Scott for fees and expenses in their entirety.

B.Op. 9-10.

The bankruptcy court also specifically found that Scott's efforts after the case was converted to one under chapter 7 were of significant benefit to the creditors:

Most of the individual purchasers of preneed funeral trusts will be spared from any significant losses, however, because of the efforts of the [t]rustee to provide a mechanism for funeral directors to provide those individuals with fully funded replacement trusts with which most funeral directors are complying. . . . Scott assisted the [t]rustee in this effort. Scott has

> provided funerals for its preneed clients who have died and replacement trusts for its living individual clients in the amount of $64,548.51 and Scott, as a creditor, has an unsecured claim as a creditor of this estate for those expenditures.

B.Op. 7.

The district court reversed the bankruptcy court's decision to award Scott administrative expenses. First, the court found that under §§ 503(b)(3) and (b)(4), unless the bankruptcy petition is filed involuntarily or there is a pre-petition custodian or receiver, pre-petition fees and expenses cannot be recovered. Because these proceedings were voluntary and there was no pre-petition custodian or receiver, Scott could not recover any expenses that he incurred prior to the date Mechem filed its chapter 11 petition. The court also found that because §§ 503(b)(3) and (b)(4) specifically authorize the recovery of expenses for contributions made in cases "under chapter 9 or 11," any expenses incurred after a case is converted from chapter 9 or 11 may not be recovered pursuant to these sections. Thus, it held that Scott was not entitled to recoup the expenses he incurred after the case was converted to chapter 7. Turning to expenses incurred during the pendency of a chapter 9 or 11 case, the court further concluded that an applicant may recover such expenses pursuant to §§ 503(b)(3) and (b)(4) only if they were incurred as a result of activities which made a "substantial contribution" to the case, and which were not engaged in primarily for the applicant's own benefit. The court held that because Scott's actions "were mainly done to protect

his own interests, and any benefits conferred upon the estate were incidental[,]" there was no basis for awarding him any expenses.  In addition, the court commented that it would be unjust for Scott, an original incorporator, director, shareholder, and insider of the debtor, to be reimbursed in full from funds that would otherwise benefit hundreds of duped purchasers.  In this regard, the court found that the replacement trusts which Scott helped establish did "not make the purchasers whole."  Op. 5.

II.

We exercise plenary review over the district court's decision, as well as over the legal determinations of the bankruptcy court.  However, we review the bankruptcy court's factual findings for clear error.  See Sapos v. Provident Inst. of Sav. in Town of Boston, 967 F.2d 918, 922 (3d Cir. 1992) ("Because in bankruptcy cases the district court sits as an appellate court, our review of the district court's decision is plenary.  This court exercises the same review over the district court's decision that the district court may exercise.  The findings of fact by the bankruptcy court are reviewable only for clear error.  Legal questions are, of course, subject to plenary review".) (quoting Brown v. Pa. State Employees Credit Union, 851 F.2d 81, 84 (3d Cir. 1988) (citations omitted)).

III.

Subsections 503(b)(3) and (b)(4) of the Bankruptcy Code, the only authority relied upon by Scott in support of his award, authorize the court to award administrative expenses under several different sets of circumstances.  They provide:

    (b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including--

                * * *

    (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by--

        (A) a creditor that files a petition under section 303 of this title;

        (B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;

        (C) a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;

        (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; or

        (E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian;

    (4) reasonable compensation for professional services rendered by an attorney

or an accountant of an entity whose expense
is allowable under paragraph (3) of this
subsection, based on the time, the nature,
the extent, and the value of such services,
and the cost of comparable services other
than in a case under this title, and
reimbursement for actual, necessary expenses
incurred by such attorney or
accountant . . ..

§ 503. Because § 503(b)(4) authorizes awards of legal and accounting fees only in situations coming within the scope of § 503(b)(3), and because subsection (D) is the only portion of § 503(b)(3) arguably applicable here,' we focus on § 503(b)(3)(D).

Under § 503(b)(3)(D), four categories of persons may apply for reimbursement of expenses: (1) creditors, (2) indenture trustees, (3) equity security holders, and (4) creditor and equity holder committees other than official committees appointed under § 1102 of the Bankruptcy Code. The court may award an applicant actual, necessary expenses which were incurred "in making a substantial contribution in a case under chapter 9 or 11." Under subsection (b)(4), this may include reimbursement for professional fees of an attorney or accountant, where those

'Scott cannot recover his claimed expenses pursuant to §503(b)(3)(A) because this subsection refers to creditors that file an involuntary petition under § 303, which Scott did not do here. Subsection (b)(3)(B) is also inapplicable because it requires that the creditor seek prior approval from the court for his or her actions, which Scott did not seek. Nor may Scott recover expenses pursuant to subsection (B)(3)(C), because this section pertains to expenses incurred in connection with the prosecution of a criminal offense, and none of the bills submitted by Scott reflect charges for services rendered in the course of criminal proceedings against Copple. See D.Ct. Op. 14. Finally, subsection (b)(3)(E) is inapplicable here because it refers to expenses incurred by a superseded custodian, and there was no superseded custodian in this case.

fees meet the additional requirements of that subsection.  Any expenses reimbursed are administrative expenses with the attendant priority.  11 U.S.C. § 507 (1988).

Here, Scott is a creditor as well as an equity security holder, and the administrative expenses that he seeks consist of attorney fees and general expenses.  Therefore, he is entitled to these expenses if he incurred them as a result of activities which (1) made a "substantial contribution," (2) "in a case under chapter 9 or 11."

The "substantial contribution" standard of § 503(b)(3)(D) is derived from §§ 242 and 243 of the former Bankruptcy Act, 11 U.S.C. §§ 642, 643 (repealed 1978).  Sen. Rep. No. 95-989, 95th Cong., 2nd Sess. 5, reprinted in 1978 U.S.C.C.A.N. 5787, 5852.  Those sections were, in turn, derived from former Section 77B(c)(9) of the Bankruptcy Act, 11 U.S.C. § 207(c)(9) (repealed 1938).  See, 6A James William Moore & Robert Stephen Oglebay, Collier on Bankruptcy ¶ 13.01, at 521-23 (James William Moore ed., 14th ed. 1977); Alfred B. Teton, Reorganization Revised, 48 Yale L.J. 573, 603-607 (1939).  Sections 242 and 243 and § 503(b)(3)(D) liberalized the circumstances under which reimbursement was authorized, but at each stage in the progression, the core concept has been the same.  See, Collier, supra, ¶ 13.01, at 523 (14th ed.); 3 Hon. Roy Babitt, et al., Collier on Bankruptcy ¶ 503.04, at 14 & 44-50 (Lawrence P. King ed. 15th ed. 1994); Teton, supra, at 604.  The services engaged by creditors, creditor committees and other parties interested in a reorganization are presumed to be

incurred for the benefit of the engaging party and are reimbursable if, but only if, the services "directly and materially contributed" to the reorganization. Steere v. Baldwin Locomotive Works, 98 F.2d 889, 891 (3d Cir. 1938) (applying Section 77B(c)); In re Solar Mfg. Corp., 206 F.2d 780 (3d Cir. 1953) (same); In re Mt. Forest Fur Farms of Am., Inc., 157 F.2d 640 (6th Cir. 1946) (applying § 243); In re Lister, 846 F.2d 55 (10th Cir. 1988) (applying § 503(b)(3)(D)).

Thus, "[i]n determining whether there has been a 'substantial contribution' pursuant to section 503(b)(3)(D), the applicable test is whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." In re Lister, 846 F.2d 55, 57 (10th Cir. 1988). See also, Matter of Consol. Bancshares, Inc., 785 F.2d 1249, 1253 (5th Cir. 1986); Collier, supra, ¶ 503.04, at 38 (15th ed.). "[S]ervices which substantially contribute to a case are those which foster and enhance . . . the progress of reorganization." Consol. Bancshares, Inc., 785 F.2d at 1253 (quoting In re Richton Int'l Corp., 15 B.R. 854, 855 (Bankr. S.D.N.Y. 1981) (other citation omitted)).

Subsection 503(b)(3)(D) represents an accommodation between the twin objectives of encouraging "meaningful creditor participation in the reorganization process," Richton, 15 B.R. at 855-56 (citation omitted), and "keeping fees and administrative expenses at a minimum so as to preserve as much of the estate as possible for the creditors." Otte v. U.S., 419 U.S. 43, 53 (1974) (citation omitted). Inherent in the term "substantial" is

the concept that the benefit received by the estate must be more than an incidental one arising from activities the applicant has pursued in protecting his or her own interests. Creditors are presumed to be acting in their own interests until they satisfy the court that their efforts have transcended self-protection. In re Solar Mfg. Corp., 206 F.2d at 781 (the "work [of attorneys employed by creditors] must be at the expense of their clients unless it is in some manner beneficial to the estate"); In re Lister, 846 F.2d 55, 57 (10th Cir. 1988); Consol. Bancshares, Inc., 785 F.2d at 1253 ("a creditor's attorney must ordinarily look to its own client for payment, unless the creditor's attorney rendered services on behalf of the reorganization, not merely on behalf of his client's interest, and conferred a significant and demonstrable benefit to the debtor's estate and the creditors.") (quoting from In re Gen. Oil Distribs., 51 B.R. 794, 806 (Bankr. E.D.N.Y. 1985)); In re Bldgs. Dev. Co., 98 F.2d 844 (7th Cir. 1938); In re Jensen-Farley Pictures Inc., 47 B.R. 557, 569 (Bankr. D. Utah 1985). Most activities of an interested party that contribute to the estate will also, of course, benefit that party to some degree, and the existence of a self-interest cannot in and of itself preclude reimbursement. Nevertheless, the purpose of § 503(b)(3)(D) is to encourage activities that will benefit the estate as a whole, and in line with the twin objectives of § 503(b)(3)(D), "substantial contribution" should be applied in a manner that excludes reimbursement in connection with activities of creditors and other interested parties which are designed primarily to serve their own interests and which,

accordingly, would have been undertaken absent an expectation of reimbursement from the estate.

We turn now to the statutory requirement that the expenses be ones incurred "in a case under chapter 9 or 11."  The Lebrons argue that this language expressly limits the authority conferred by § 503(b)(3)(D) to only those expenses that were incurred during the pendency of a chapter 9 or chapter 11 case. In other words, they claim that this section authorizes only the recovery of expenses that are the result of efforts occurring after a petition for chapter 9 or 11 proceedings is filed, but before either the reorganization ends, or the case is converted to one under chapter 7 or 13.

We perceive a fallacy in this argument.  It is the "substantial contribution," not the activity, that must occur "in a case" under chapter 11, and the Lebrons' argument assumes that activities conducted and expenses incurred before the filing of a chapter 11 petition cannot substantially contribute to the reorganization efforts during the pendency of a chapter 11 case. We believe the facts of this case, as found by the bankruptcy court, demonstrate that this assumption is not sound.  The information generated by Scott's pre-petition activities in this case materially assisted the trustee in carrying out his responsibilities in the chapter 11 proceedings.

We think our understanding of § 503(b)(3)(D) is confirmed by its legislative history.  Under section 77B(c) of the Bankruptcy Act, reimbursement of fees was authorized for pre-petition services of informal committees of creditors and

stockholders where those services directly benefitted the reorganization.  See, e.g., In re Ulen & Co., 130 F.2d 303 (2d Cir. 1942); In re Detroit Int'l Bridge Co., 111 F.2d 235 (6th Cir. 1940); Stark v. Woods Bros. Corp., 109 F.2d 969 (8th Cir. 1940); Sullivan & Cromwell v. Colo. Fuel & Iron Co., 96 F.2d 219 (10th Cir. 1938); In re Memphis Street Ry. Co., 86 F.2d 891 (6th Cir. 1936); In re Tudor Gables Bldg. Corp., 83 F.2d 871 (7th Cir. 1936); In re Nat'l Lock Co., 82 F.2d 600 (7th Cir.), cert. denied, 299 U.S. 562 (1936).[2]  The practice of organizing informal committees before the filing of the petition to function in anticipation of reorganization proceedings continues today.[3]

The legislative history of § 503(b)(3)(D) indicates that it was intended to alter the preexisting law in only one respect:  "It does not require a contribution that leads to confirmation of a plan [because Congress believed that in] many cases it will be a substantial contribution if the person involved uncovers facts that would lead to a denial of confirmation, such as fraud in connection with the case."  Supra, 1978 U.S.C.C.A.N. at 5852–53.  This legislative history and the practice under the prior law demonstrate, we believe, that

---

[2]Under this "direct benefit" rule, pre-petition expenses were reimbursed only if they directly contributed to a reorganization plan that ultimately was adopted.
[3]See Bankr. Rule 2007, 11 U.S.C.A. (1984 & Supp. 1994), which states that, "on application of a party in interest and after notice as the court may direct, the court may appoint as the committee of unsecured creditors required by § 1102(a) of the Code, members of a committee selected before the order for relief in accordance with subdivision (b) of this rule."  Thus, if certain requirements are met, the court may appoint some or all of the members of the informal committee to the formal post-petition committee.

§503(b)(3)(D) was not intended to impose an across-the-board bar to the reimbursement of expenses incurred before the filing of the petition.

The only other Court of Appeals to have addressed the issue agrees with our reading of § 503(b)(3)(D).  In re Lister, 846 F.2d at 57 ("administrative expenses incurred prior to the filing of a [chapter 11] bankruptcy petition are compensable under 11 U.S.C. § 503(b)(3)(D), if those expenses are incurred in efforts which were intended to benefit, and which did directly benefit, the bankruptcy estate.").

While we conclude that there is no across-the-board bar to the recovery of Scott's pre-petition expenses, we reach a different conclusion with respect to his post-conversion expenses.  Where, as here, a chapter 11 proceeding is converted into a chapter 7 proceeding, we do not see how expenses incurred after the conversion can be said to have made a substantial contribution in the proceedings under chapter 11.  There are provisions of § 503 other than subsection (b)(3)(D) that authorize reimbursement of expenses incurred in connection with a chapter 7 proceeding, and we believe that post-conversion expenses were intended to be reimbursable under those provisions or not at all.  See, e.g., §§ 503(b)(3)(B) and (C).

In sum, we conclude that, if the substantial contribution test is met, expenses incurred by a creditor prior to the filing of a chapter 11 petition, or while a chapter 11 case is pending, are recoverable pursuant to § 503(b)(3)(D). Expenses incurred after a chapter 11 case is converted to one

under chapter 7, however, are not recoverable pursuant to this provision.

IV.

Applying the above analysis to the case at hand, we hold that the district court erred when it found that pre-petition expenses are not covered by § 503(b)(3)(D). We also conclude that there is record support for the bankruptcy court's factual finding that Scott's efforts, both before the chapter 11 petition was filed and during the time the case was in chapter 11, benefitted the estate during the pendency of the chapter 11 proceeding. As the bankruptcy court explained, Scott's efforts against Copple and Mechem were "critical to the Court in making an immediate determination to appoint a Trustee and critical to the Trustee in making a prompt investigation and report to the Court."

As we have indicated, however, a determination that a benefit was conferred does not end the inquiry as to whether there was a "substantial contribution" within the meaning of §503(b)(3)(D). A creditor should be presumed to be acting in his or her own interest unless the court is able to find that his or her actions were designed to benefit others who would foreseeably be interested in the estate. In the absence of such a finding, there can be no award of expenses even though there may have been an incidental benefit to the chapter 11 estate. Here, the bankruptcy court made no such finding. There was evidence before it tending to show that Scott incurred the reimbursed expense in

pursuit of his own interests. He appears to have incurred a substantial portion of that expense, for example, in litigation over control of Mechem initiated many months before a reorganization was anticipated by anyone. If this be true, this expense would not be reimbursable under § 503(b)(3)(D) even if information disclosed in that litigation subsequently turned out to be helpful to the trustee. On the other hand, there was evidence from which the bankruptcy court could have concluded that at least some of Scott's efforts were designed to benefit the chapter 11 estate and its creditors.

The inquiry concerning the existence of a substantial contribution is one of fact, and it is the bankruptcy court that is in the best position to perform the necessary fact finding task. Consol. Bancshares, Inc., 785 F.2d at 1253. Accordingly, we will remand this case with instructions that the bankruptcy court determine whether the efforts which Scott made prior to the conversion of the chapter 11 proceeding made a substantial contribution within the meaning of § 503(b)(3)(D).

The bankruptcy court also awarded Scott expenses that he incurred after the case was converted to chapter 7. Specifically, the court awarded Scott expenses associated with his assistance to the trustee in the collection of assets for the benefit of the creditors, and his role in setting up replacement trusts for the investors. We have found, however, that §§ 503(b)(3)(D) and (b)(4) do not authorize fee awards for expenses incurred after a case is converted from one under chapter 11 to one under chapter 7. Therefore, with regard to the

administrative expenses that Scott incurred after the conversion of the case to chapter 7, we will affirm the district court's decision to reverse the bankruptcy court's award.[4]

## V.

We will reverse the order of the district court and direct that the case be remanded to the bankruptcy court for further proceedings consistent with this opinion.[5]

---

[4]The Lebrons argue, and the district court agreed, that it was an abuse of discretion by the bankruptcy court to award Scott any administrative expenses because Scott was an incorporator and insider in the company that committed the fraud, and, therefore, it would be inequitable to prioritize his claims over the claims of the other, less involved, creditors. We reject this argument, however, because there is no evidence that Scott was at all involved in the fraud.

[5]Scott also asks us to uphold the bankruptcy court's award to him on an alternative theory. The theory rests upon a passing comment of the bankruptcy court: "Certainly, if Scott were entitled only to post-petition fees and expenses, he would be entitled to a fee enhancement on the basis of the post-petition fees in an amount equivalent to his pre-petition fees." B.Op. 10. We decline to reinstate the award to Scott on this theory for several reasons. First, Scott would not be entitled to an enhancement in connection with post-petition fees which he incurred in pursuit of his own interest with only an incidental benefit being bestowed on the estate. Second, even assuming an enhancement is appropriate in some circumstances under §§ 503(b)(3)(D) and (b)(4), we perceive no rational basis for an enhancement of post-petition fees measured by the amount of pre-petition fees incurred. Without the benefit of some further explanation of the bankruptcy court's thinking, this passing observation appears far too arbitrary to be sustainable. Finally, we understand the purpose of subsection (b)(4) to be to limit reimbursement of a creditor for legal and accounting expenses to an amount determined by the court to be reasonable after considering the factors designated therein. We do not read subsection (b)(4) to authorize a payment to a creditor in excess of the amount he or she was required to pay for those services.