**In re CVEO CORPORATION,
f/k/a/CONVERSE, INC.,
Debtor.**

**Argus Management Group as Trustee
for the Creditors Reserve Trust,
Plaintiff,**

**v.**

**Chanin Capital Partners,
LLC, Defendant.**

**Bankruptcy No. 01–0223(MFW).
Adversary No. 03–54130.**

United States Bankruptcy Court,
D. Delaware.

Jan. 24, 2005.

Jason C. Powell, Jason Custer Powell, Theodore J. Tacconelli, Ferry & Joseph PA, Wilmington, DE, Kevin G. Hroblak, Whiteford, Taylor & Preston, LLP, Baltimore, MD, for Argus Management Group as trustee for the Creditors Reserve Trust, Plaintiff.

Laura Davis Jones, Rachel Lowy Werkheiser, Pachulski, Stang, Ziehl, Young &

Jones, Wilmington, DE, for Official Committee of Unsecured Creditors of Converse, Inc., Creditor Committee.

Sherry Ruggiero Fallon, Esquire, Tybout Redfearn & Pell, Wilmington, DE, for Chanin Capital Partners, LLC, Defendant.

Julie L. Compton, U.S. Trustee, Office of the U.S. Trustee, Wilmington, DE, U.S. Trustee.

## MEMORANDUM OPINION [1]

MARY F. WALRATH, Chief Judge.

The Plaintiff, the trustee for the Creditors Reserve Trust, seeks summary judgment on its Complaint to Avoid Preferential and Fraudulent transfers under the Bankruptcy Code and the Massachusetts Uniform Fraudulent Transfer Act. The Defendant opposes the Motion, asserting that there are material issues of disputed fact. For the reasons set forth below, we will deny the Motion.

## I. BACKGROUND

CVEO Corporation f/k/a Converse, Inc. ("the Debtor") filed a chapter 11 petition on January 22, 2001. Two months before that, in November of 2000, an ad hoc committee of its noteholders ("the Ad hoc Committee") and the Debtor entered into an agreement ("the Agreement") with Chanin Capital Partners ("Chanin") whereby Chanin agreed to act as a financial advisor to the Ad hoc Committee. Under the Agreement, the Debtor agreed to pay a flat fee of $75,000 per month plus expenses to Chanin for services to be rendered by Chanin to the Ad hoc Committee. The Debtor did, in fact, make two prepetition payments to Chanin totaling $161,879.

The Plaintiff has filed a Complaint to recover those payments as preferential and fraudulent transfers. On September 9, 2004, the Plaintiff filed a Motion for Summary Judgment on the Complaint. Opposing the Plaintiff's motion, Chanin argues that there are disputed issues of material fact in three areas: (1) whether the payments allowed Chanin to receive more than it would have received in a liquidation; (2) whether the payments were made in the ordinary course of business; and (3) whether Chanin provided the Debtor with reasonably equivalent value.

The summary judgment motion has been fully briefed and affidavits and deposition transcripts in support of the parties' positions have been submitted under Rule 56(e) of the Federal Rules of Civil Procedure, which is incorporated by Rule 7056 of the Federal Rules of Bankruptcy Procedure. The matter is now ripe for decision.

## II. JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157(b)(2)(F) & (H).

## III. DISCUSSION

### A. Standard for Summary Judgment

The party filing a motion for summary judgment bears the burden of proving that it has established all the elements of its case entitling it to judgment in its favor and that there is no genuine issue of material fact in dispute. See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Facts that could alter the outcome are 'material' ... and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.,* 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted).

Once the moving party establishes the absence of a genuine issue of material fact, however, the burden shifts to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that "would be admissible in evidence," establishing the existence of a genuine issue of material fact for trial. Fed. R. Bankr.P. 7056. *See also Fireman's Ins. Co. of Newark, N.J. v. DuFresne,* 676 F.2d 965, 969 (3d Cir.1982) ("Rule 56(e) does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegations or suspicions"); *Olympic Junior, Inc. v. David Crystal, Inc.,* 463 F.2d 1141, 1146 (3d Cir.1972) ("Conclusory statements, general denials, and factual allegations not based on personal knowledge would be insufficient to avoid summary judgment"); *Tripoli Co., Inc. v. Wella Corp.,* 425 F.2d 932, 935 (3d Cir.1970) (holding that to defeat summary judgment motion, "a party must now come forward with affidavits setting forth specific facts showing that there is a genuine issue for trial"). Unsworn statements of counsel in memoranda submitted to the court are "insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation,* 912 F.2d 654, 657 (3d Cir.1990).

### B. *Preferential Transfers*

To establish that a transfer is a voidable preference, the Plaintiff must show that the transfer was:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

    (A) on or within 90 days before the date of the filing of the petition; or

    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

    (A) the case were a case under chapter 7 of this title;

    (B) the transfer had not been made; and

    (C) such creditor received payment of such debt to the extent provided by the provisions of this title . . . .

11 U.S.C. § 547(b).

The Plaintiff has presented evidence, undisputed by Chanin, as to four of the five elements of a preferential transfer, i.e. that the payments were to or for the benefit of a creditor, for or on account of an antecedent debt, made while the debtor was insolvent, and made within 90 days of the bankruptcy petition filing. Chanin claims that there is a material issue of fact as to whether it received more than it would have in a liquidation.

### 1. *Did Chanin receive more than in a liquidation?*

In support of this argument, Chanin points to paragraph 3(d) of the Agreement which provides: "It is further intended by the parties hereto that such of Chanin's fees payable pursuant hereto, but remaining unpaid at the time of the filing of any petition under chapter 11, shall be in the nature of a post-petition claim for administrative expenses." Chanin argues, there-

fore, that if it had not been paid pre-petition, it would have been an administrative claimant. While the Plaintiff has presented evidence that the general unsecured creditors would not have been paid in full on a liquidation, Chanin notes that the Plaintiff has not presented any evidence that administrative expense creditors would not have been paid in full. Since the burden of proof on this point is on the Plaintiff, Chanin asserts that summary judgment in Plaintiff's favor is not appropriate. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (summary judgment should enter "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

The Plaintiff argues, however, that the services rendered by Chanin were pursuant to a pre-petition contract and were fully performed pre-petition. Therefore, it argues that Chanin's claim would rise to no more than a general unsecured claim. *See, e.g., Abercrombie v. Hayden Corp.,* 139 F.3d 755, 757 (9th Cir.1998) ("Postpetition contracts may qualify for administrative expense priority, but costs and expenses arising out of prepetition contracts are treated under the Bankruptcy Code as nonprioritized unsecured claims").

However, the Third Circuit has recognized that services rendered before the filing of the bankruptcy petition may be entitled to administrative claim status so long as the services provided a substantial contribution to the reorganization efforts during the pendency of the chapter 11 case. *Lebron v. Mechem Fin. Inc.,* 27 F.3d 937, 943–44 (3d Cir.1994). In fact, the Third Circuit specifically noted that such a conclusion was supported by the legislative history and practice under the Bankruptcy Act, which permitted reimbursement of fees for pre-petition services of informal committees of creditors. *Id.* at 945 (citations omitted).

It is not enough, however, to show that fees and expenses were incurred pre-petition by an informal committee of creditors or that there was a pre-petition agreement that the fees would have administrative claim status. In order to achieve administrative status, Chanin must establish that. the pre-petition activity directly benefited the post-petition reorganization efforts. Chanin has presented evidence, by the testimony of its representatives, that it provided a substantial contribution to the chapter 11 case by its analysis of the Debtor's business and assets and assistance it provided in the preparation of the Debtor for sale. The Plaintiff has presented affidavits of the Debtor's officers who state that Chanin did not provide any benefit to them or their reorganization. Therefore, a genuine issue of material fact is in dispute. *See, e.g., Horowitz,* 57 F.3d at 302 n. 1 ("Summary judgment is inappropriate when a case will turn on credibility determinations.").

2. *Has Chanin established an ordinary course defense?*

Chanin claims that summary judgment in favor of the Plaintiff is also inappropriate because Chanin has an affirmative defense, namely, that the payment was made in the ordinary course of business. To prove this affirmative defense, Chanin must show that the payments were:

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms . . . .

11 U.S.C. § 547(c)(2). All three elements must be established. *See, e.g., J.P. Fyfe, Inc. v. Bradco Supply Corp.*, 891 F.2d 66, 69 (3d Cir.1989).

■ "The purpose of the [ordinary course of business] exception is to leave undisturbed normal financing relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." *Id.* at 70 (quoting S.Rep. No. 989, 95th Cong., 1st Sess. 88, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5874).

■ As to the first element, the defendant "must demonstrate that the original transaction creating the debt is within the ordinary course of dealing between the parties." *In re Toy King Distribs., Inc.*, 256 B.R. 1, 114 (Bankr.M.D.Fla.2000) (internal quotations and citations omitted). The second element is a subjective inquiry focusing on the ordinary payment pattern of both the debtor and the creditor. *Id.* at 120. The third element "refers to the *range* of terms that encompasses the practices in which firms similar in some general way to the creditor in question engage, and that only dealings so idiosyncratic as to fall outside that broad range should be deemed extraordinary and therefore outside the scope of subsection C." *Fiber Lite Corp. v. Molded Acoustical Prods., Inc. (In re Molded Acoustical Prods., Inc.)*, 18 F.3d 217, 220 (3rd Cir.1994) (internal quotations and citations omitted).

■ With respect to the first element, Chanin has presented evidence that the Agreement was entered in the ordinary course of its own business. As an investment banker and financial advisory firm, it often enters into such agreements with corporations and their public noteholders.

The more difficult issue is whether there is any evidence that the Agreement was in the ordinary course of the Debtor's business.

Chanin argues that it is ordinary for "[a]n entity encountering difficult financial times" such as the Debtor to seek professional advice as part of its restructuring efforts. *See, e.g., Harman v. First American Bank (In re Bigelow Design Group, Inc.)*, 956 F.2d 479, 488 (4th Cir.1992). It further argues that the debt was incurred by the Debtor as part of an arms-length commercial transaction. Eric Scroggins, Chanin's witness, testified that the Debtor entered into the Agreement because it thought the Agreement was in its own best interests, and that the Debtor derived benefit from the services provided by Chanin to the Committee.

The Plaintiff argues that it clearly was not in the ordinary course of the Debtor's business, which was the manufacture and sale of sneakers. The Debtor was not in the habit of paying the fees of its creditors' professionals. *See* Lawlor Affidavit at ¶ 8. Further, it asserts that the Ad hoc Committee coerced the Debtor into agreeing to pay Chanin's fees by threatening to file an involuntary petition against the Debtor. Such action, the Plaintiff asserts, is exactly what Congress intended to prevent by enacting the preference provisions.

It is apparent that there are genuine issues of material fact as to the circumstances of the agreement to pay Chanin's fees and whether the Debtor was agreeing to pay other restructuring fees at the same time. Consequently, we cannot find that the debt arose in the ordinary course of the Debtor's business or financial affairs. Similarly, we conclude that there are genuine issues of material fact as to the second and third elements of the ordinary course of business defense, whether the payments were made according to an ordinary pay-

ment pattern and whether the Agreement and payments fall outside the ordinary range of terms in the industry generally. Therefore, summary judgment is not appropriate and the Motion will be denied as to the preference count of the Plaintiff's Complaint.

## C. *Fraudulent Transfers*

The Plaintiff alleges in Count II of its Complaint that the payments were fraudulent transfers under the Bankruptcy Code and applicable state law.[2] Section 548(a)(1) of the Bankruptcy Code provides in relevant part:

> The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> . . . . .
>
> (B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation . . . .

11 U.S.C. § 548(a)(1). The Massachusetts Uniform Fraudulent Transfer Act requires substantially the same showing.

■ The only element of a fraudulent transfer as to which Chanin claims that there is a material fact in dispute is whether the Debtor received less than reasonably equivalent value in exchange for the payments it made to Chanin.

The Plaintiff argues that no value at all was given by Chanin to the Debtor. To support this argument, the Plaintiff presented the affidavit of James Lawlor, the Debtor's former Chief Financial Officer, who stated that services were rendered by Chanin solely to the Ad hoc Committee and that the Debtor received no value. Further, the Plaintiff notes that the Agreement itself said that the Ad hoc Committee was Chanin's client and the Debtor could not rely on Chanin's work.

Chanin argues in response that, as a matter of law, we must conclude that value was given because the payments were made in satisfaction of an antecedent debt. 11 U.S.C. § 548(d)(2)(A) ("value" is defined for purposes of this section to include the "satisfaction or securing of a present or antecedent debt"). *See also Sherman v. FSC Realty LLC (In re Brentwood Lexford Partners, LLC)*, 292 B.R. 255, 268 (Bankr.N.D.Tex.2003); *Balaber–Strauss v. Sixty–Five Brokers (In re Churchill Mortgage Inv. Corp.)*, 256 B.R. 664, 678–80 (Bankr.S.D.N.Y.2000).

We disagree with Chanin's legal argument. In this case, the antecedent debt itself arose within the fraudulent conveyance period. Therefore, we must determine if the Debtor's undertaking to be liable for that debt provided any benefit to the estate which is reasonably equivalent to the liability incurred and paid.

Even if the Court were inclined to examine the amount of the value given, however, Chanin argues that there are disputed facts on this point. It presented the depositions of Scroggins and Michael Seery, a vice president of Chanin, who testified that the Debtor did receive value from the services Chanin provided: (1) the Debtor's

---

**2.** Under section 544(b) of the Bankruptcy Code, "[T]he trustee may avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law ...." In this case, the Plaintiff seeks to avoid the payments under the Massachusetts Uniform Fraudulent Transfer Act. *See* Mass. Gen. Laws ch. 109A, §§ 1 *et seq.* (2004).

agreement to pay for Chanin's services kept the noteholders from filing an involuntary petition against the Debtor; (2) the purpose of Chanin's engagement was to maximize the value of the Debtor's assets; (3) Chanin shared its work product with the Debtor, allowing the Debtor to negotiate a higher price for its assets. *See, e.g., Pummill v. Greensfelder, Hemker & Gale (In re Richards & Conover Steel, Co.),* 267 B.R. 602 (8th Cir. BAP 2001) (holding that there was no fraudulent transfer where attorney for pre-petition ad hoc committee of unsecured creditors was paid by debtor).

As noted above, the Plaintiff has presented testimony that conflicts with Chanin's position. Therefore, we conclude that there is a genuine issue of material fact as to whether the Debtor received value from the services Chanin provided to the Committee that was reasonably equivalent in value to the payments made to Chanin. Thus, summary judgment is also not appropriate on the fraudulent transfer count.

## IV. CONCLUSION

For the reasons stated above, we conclude that the Motion for Summary Judgment filed by the Plaintiff should be denied.