**In re: FF HOLDINGS CORPORATION, and Farm Fresh, Inc., Debtors.**

**Nos. 98–37–JJF, 98–38–JJF.**

United States District Court, D. Delaware.

May 9, 2006.

Joanne B. Wills, Klehr, Harrison, Harvey, Branzburg & Ellers, LLP, Wilmington, DE, Dechert LLP, New York, NY (Joel H. Levitin, David C. McGrail, of counsel), for the Reorganized Debtors.

Francis A. Monaco, Jr., Joseph J. Bodnar, Walsh and Monzack, P.A., Wilmington, DE, Anderson Kill & Olick, P.C., New York, NY (J. Andrew Rahl, Jr., of counsel), for PPM America Special Investments Fund, L.P.

Kelly Beaudin Stapleton, Esquire, United States Trustee of the Office of the United States Trustee, Philadelphia, PA, for the United States Trustee.

## MEMORANDUM OPINION

FARNAN, District Judge.

Pending before the Court is an Application For Allowance Of Expenses From The Debtors Pursuant To 11 U.S.C. § 503(b)(3) and (4) (D.I.231–2) filed by PPM America Special Investments Fund, LP ("PPM").[1] A Motion For Leave To File Late Application For Allowance Of Expenses (D.I.231–1) was filed by PPM and granted by the Court at a hearing. The Debtors have not opposed PPM's application; however, the United States Trustee (the "Trustee") has filed an Objection (D.I.233). For the reasons discussed, PPM's Motion will be granted, and the Trustee's Objection will be overruled.[2]

## I. PARTIES' CONTENTIONS

PPM has argued both in its papers and at the hearing that it is entitled to fees in the amount of $15,222.60. PPM contends that it provided a substantial contribution to the Debtors' estate in two ways. First, PPM contends that it induced Jackson National Life Insurance Company ("Jackson"), one of PPM's affiliates, to propose alternative debtor-in-possession ("DIP") financing for the estate. Although this alternative DIP financing was not used by the estate, PPM contends that the fact that an alternate financing source was available to the Debtors increased the Debtors' bargaining leverage with other parties in the case. To this effect, PPM points out that it argued before the Court that the Debtors should accept the Jackson proposal, and thus, other parties in the case knew from the outset that the Debt-

---

1. The fee application itself was not separately docketed from the Motion For Leave To File Late Application which is original docket item number 231. Accordingly, the Court has designated the fee application as docket item number 231–2.

2. By letter dated December 14, 2005, the Court was informed by PPM that the instant fee application remained pending. Upon receiving PPM's letter, the Court requested that the steno notes from the fee application hearing be transcribed. The Court received a copy of the transcript on May 4, 2006.

ors had alternative DIP financing readily available.

PPM also contends that it induced First Bank, National Association ("First Bank"), as Indenture Trustee, to withdraw its objection to confirmation of the Debtors' plan. PPM contends that First Bank's objection was the most substantial objection to the plan, and its withdrawal facilitated the confirmation of the plan and prevented delays which could have resulted in a reduced purchase price for the Debtors' assets, a lost sale, and ultimately a decrease in the distributions made under the plan.

In response, the Trustee contends that PPM has failed to establish that its services provided a substantial contribution to the estate under 11 U.S.C. § 503(b). The Trustee contends that many of the actions taken by PPM were for the benefit of PPM, who was also a creditor of the Debtors as the beneficial owner of approximately $30.5 million in 12–1/4% Senior Notes due in 2000, $3 million in 12–1/4% Senior Notes A series due in 2000, and $12.7 million of 14–1/4% Senior Notes due in 2002. The Trustee contends that there is no record evidence supporting PPM's assertion that alternative DIP financing provided any leverage to the Debtors, or that the availability of such financing was used by the Debtors to get better terms from the lender it ultimately borrowed with. The Trustee also contends that the evidence does not demonstrate that PPM induced First Bank to withdraw its objection, and that there is a reasonable inference that First Bank would have withdrawn its objection once it saw how the case was progressing.

In the alternative, the Trustee objects to the amount of the fees sought. Specifically, the Trustee contends that PPM's fees are unreasonable, because (1) counsel billed at a full time rate for travel, (2) counsel has not proven that travel was necessary or that it conferred a substantial contribution to the bankruptcy estate, (3) counsel failed to include an adequate description of the activities undertaken so a determination could be made as to whether the activities were reasonable, and (4) a disproportionate amount of the time billed was by a partner with a rate in excess of $400.00 per hour.

## II. DISCUSSION

In pertinent part, Section 503(b) of the Bankruptcy Code provides:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including . . .

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by . . .

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title . . .

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant . . .

11 U.S.C. § 503(b)(3)(D) & (4). The party seeking an award of administrative ex-

penses must prove its claim by a preponderance of the evidence. *Matter of Columbia Gas System, Inc.*, 224 B.R. 540, 548 (Bankr.D.Del.1998).

To determine whether a party's actions constituted a "substantial contribution" under Section 503(b)(3)(D), the Court must determine "whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." *In re AM Int'l, Inc.*, 203 B.R. 898, 904 (D.Del.1996). In the case of a reorganization, services substantially contribute to the case if they foster and enhance the progress of the reorganization. *Lebron v. Mechem Financial Inc.*, 27 F.3d 937, 944 (3d Cir.1994). However, the reimbursement of expenses should not be permitted even though a benefit is conferred on the estate, if the applicant's activities primarily served its interests and would not have been undertaken absent an expectation of reimbursement from the estate. *Id.*

Reviewing the parties' arguments and the submissions of PPM in light of the relevant legal standard, the Court concludes that PPM has established, by a preponderance of the evidence, that it conferred a substantial benefit on the estate and the creditors of the estate as a result of its efforts to find an alternative DIP financing source for the Debtor and its efforts to persuade First Bank to withdraw its objection to the plan. PPM was an active participant in the negotiations leading to the confirmation of the Debtors' Plan, and PPM took steps to dissuade First Bank from maintaining its objection to the plan, including a directive to PPM based on the Indenture, a letter threatening action against First Bank, and a series of conversations between PPM and First Bank. Although First Bank would not concede in its letter response to PPM's counsel that PPM's pressure induced it to withdraw its objection, the Court is persuaded that PPM's influence played some role in the inability of First Bank to continue with its objection and its ultimate decision to withdraw its objection. The Court is further persuaded that the rapid disposal of First Bank's objection was beneficial to the estate, and all creditors of the estate, because the estate was saved the expense of a hearing and was able to avoid the potential losses that could have resulted from a delay in the plan's confirmation.

In addition, the Court is persuaded that PPM has demonstrated a benefit to the estate by its work to negotiate alternate DIP financing for the Debtors. That another lender was readily available to the Debtors undoubtedly assisted the Debtors in its negotiations with other parties.

In sum, the Court is convinced that PPM's actions benefitted the estate and all creditors of the estate by fostering and enhancing the Debtors' reorganization. While PPM certainly received a benefit from its actions as well, the Court is not persuaded that PPM's actions were so self-serving that they do not warrant an award of administrative expenses. Moreover, PPM's conduct is not the type of conduct that PPM would have taken only if it expected reimbursement from the estate. For example, PPM was certainly aware that its alternative financing may not have been used by the Debtors, yet PPM arranged for this financing to assist Debtors and the Debtors' creditors. Accordingly, the Court concludes that PPM is entitled to its administrative expenses under Section 503(b).

As for the Trustee's objections to particular expenses sought by PPM, the Court concludes that sufficient evidence has been presented by PPM to substantiate its charges. Viewed in the context of PPM's explanations for its conduct provided in both its submissions and at the hearing,

the Court concludes that PPM's billing records are sufficiently detailed to justify the charges incurred. PPM has adequately explained and accounted for the role of Mr. Rahl in negotiating the DIP financing and working to resolve First Bank's objection, and the Court is persuaded that Mr. Rahl's bills are justified. PPM has also adequately explained its travel expenses, and therefore, the Court concludes that the fees sought by PPM are appropriate.

## III. CONCLUSION

For the reasons discussed, the Court will grant the Application For Allowance Of Expenses From The Debtors Pursuant To 11 U.S.C. § 503(b)(3) and (4) filed by PPM and overrule the Trustee's Objection.

An appropriate Order will be entered.

### *ORDER*

At Wilmington, this 9 day of May 2006, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1. The Application For Allowance Of Expenses From The Debtors Pursuant To 11 U.S.C. 503(b)(3) and (4) (D.I.231–2) filed by PPM America Special Investments Fund, LP is *GRANTED*.

2. The Objection Of The United States Trustee To The Motion Of PPM America Special Investments Fund, LP For Allowance Of Expenses From The Debtors Pursuant To 11 U.S.C. § 503(b)(3) and (4) (D.I.233) is *OVERRULED*.