**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3970
_____

IN RE:  TROPICANA ENTERTAINMENT LLC, et al.,

Reorganized Debtors

AD HOC CONSORTIUM OF SENIOR
SUBORDINATED NOTEHOLDERS,

Appellant

On Appeal from the United States District Court
for the District of Delaware
(No. 09-cv-00771)
District Judge:  Hon. Sue L. Robinson

Argued September 20, 2011

Before:  AMBRO, CHAGARES and ALDISERT, Circuit Judges.

(Filed:  August 31, 2012)

Lee E. Kaufman, Esq.
Richards, Layton & Finger
One Rodney Square
920 North King Street
Wilmington, DE 19899-0000

Counsel for Debtor Tropicana Entertainment LLC

James C. Carignan, Esq.
John H. Schanne, II, Esq.
David B. Stratton, Esq.
Pepper Hamilton
1313 Market Street

Suite 5100, P.O. Box 1709
Wilmington, DE 19899-1709

Daniel J. Saval, Esq. (argued)
Edward S. Weisfelner, Esq.
Brown Rudnick
7 Times Square
47th Floor
New York, NY 10036-0000

Counsel for Plaintiff-Appellant Ad Hoc Consortium of Senior Subordinated Noteholders

Robert S. Brady, Esq.
Young, Conaway, Stargatt & Taylor
1000 West Street, P.O. Box 391
17th Floor, Brandywine Building
Wilmington, DE 19801

James O. Johnston, Esq. (argued)
Dewey & Leboeuf
333 South Grand Avenue
Suite 2600
Los Angeles, CA 90071

Counsel for Defendants-Appellees Liquidating Landco Debtors and Tropicana Las Vegas Inc.

Sandra G.M. Selzer, Esq.
Greenberg Traurig
1007 North Orange Street
Suite 1200
Wilmington, DE 19801-0000

Counsel for Defendant William J. Yung, III

Mark A. Broude, Esq. (argued)
Latham & Watkins
885 Third Avenue
Suite 1000
New York, NY 10022-4802

Michael R. Lastowski, Esq.
Duane Morris

2

222 Delaware Avenue
Suite 1600
Wilmington, DE 19801-0000

Counsel for Defendants-Appellees Steering Committee of Senior Secured Lenders

_____

OPINION

_____

CHAGARES, Circuit Judge.

The Ad Hoc Consortium of Senior Subordinated Noteholders[1] appeals from the denial of a motion for reimbursement of $2,320,172 in fees and expenses, as a substantial contribution to the debtors' estate, pursuant to 11 U.S.C. § 503(b)(3)(D). For the reasons that follow, we will affirm.

I.

We write solely for the benefit of the parties and will, therefore, only briefly recite the facts essential to our disposition. On December 12, 2007 the New Jersey Casino Control Commission revoked the gaming license issued to Tropicana Entertainment LLC and related entities (collectively, "Tropicana") as a result of the gross mismanagement of board member William J. Yung, III. The revocation of the New Jersey license led to threats of de-licensure for Tropicana's operations in Indiana and Nevada and triggered events of default under Tropicana's secured credit facility and indenture. In short, Tropicana faced severe financial difficulty. In response, the Ad Hoc Consortium of

_____

[1] This Consortium consists of institutions that, at all relevant times, held more than 65% of senior unsecured notes issued by the primary debtors in this bankruptcy action, Tropicana Entertainments LLC and Tropicana Finance Corporation.

3

Senior Subordinated Noteholders (the "Consortium") urged Yung to step down voluntarily from Tropicana's board of directors. Yung refused, however, and Tropicana ultimately filed for bankruptcy, pursuant to Chapter 11, on May 5, 2008.

On May 6, 2008 the Consortium filed an emergency motion for the appointment of a Chapter 11 trustee ("Trustee Motion") in an effort to remove Yung from management and prevent further adverse regulatory action that might reduce the value of Tropicana's bankruptcy estates. Several parties, including the Official Committee of Unsecured Creditors, joined in the Trustee Motion. The parties resolved the Trustee Motion by way of a settlement, pursuant to which Yung agreed to resign from his management positions. The settlement agreement also included a clause in which Tropicana acknowledged that expenses incurred by the Consortium in prosecuting the Trustee Motion "represent a substantial contribution to the Debtors' estate." Appendix ("App.") 403.

Tropicana and various parties-in-interest negotiated a plan of reorganization over the next year that was confirmed on May 5, 2009. On July 31, 2009, the Consortium filed an application for reimbursement of the expenses it incurred in connection with the Trustee Motion (the "Application"). By way of the Application, the Consortium argued that it was entitled to such reimbursement because the $2,434,474[2] in legal fees that it incurred while prosecuting the Trustee Motion represented a substantial contribution to the debtors' estate, pursuant to 11 U.S.C. § 503(b)(3)(D) and (b)(4). After hearing oral argument on September 10, 2009, the Bankruptcy Court denied the Application, finding

---

[2] The Consortium subsequently reduced the amount of its claim to $2,320,172 to alleviate concerns raised by the United States Trustee.

that while the Trustee Motion "turned out to have a beneficial effect on the estates," the "action was taken largely in the self-interest of the movants here and would have been taken whether there would have been estate reimbursement or not." App. 533. The District Court affirmed. This appeal timely followed.

II.

We exercise plenary review over the District Court's decision, as well as the legal determinations of the Bankruptcy Court, but we review the Bankruptcy Court's factual findings only for clear error. Lebron v. Mechem Fin. Inc., 27 F.3d 937, 942 (3d Cir. 1994). Whether a creditor has made a substantial contribution within the meaning of § 503(b)(3)(D) is a question of fact, "and it is the bankruptcy court that is in the best position to perform the necessary fact finding task." Id. at 946. Importantly, the party seeking reimbursement bears the burden of proving to the Bankruptcy Court that it is so entitled. See In re Columbia Gas Sys. Inc., 224 B.R. 540, 548 (Bankr. D. Del. 1998).

III.

In "determining whether there has been a 'substantial contribution' pursuant to section 503(b)(3)(D), the applicable test is whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." Lebron, 27 F.3d at 944. Further,

> [i]nherent in the term 'substantial' is the concept that the benefit received by the estate must be more than an incidental one arising from activities the applicant has pursued in protecting his or her own interests. Creditors are presumed to be acting in their own interests until they satisfy the court that their efforts have transcended self-protection.

5

Id. To this end, we have explained that "'substantial contribution' should be applied in a manner that excludes reimbursement in connection with activities of creditors and other interested parties which are designed primarily to serve their own interests and which, accordingly, would have been undertaken absent an expectation of reimbursement from the estate." Id.[3]

On appeal, the Consortium asserts that the Bankruptcy Court improperly premised its denial of the Application entirely upon a finding that the Consortium would have prosecuted the Trustee Motion absent an expectation of reimbursement from the estate. We disagree. Rather, the Bankruptcy Court, applying the test set forth in Lebron, properly considered the fact that the Consortium presented no evidence to suggest that it would not have prosecuted the Trustee Motion absent the promise of reimbursement by the estate, and determined that the Consortium failed, as a factual matter, to overcome the presumption that it had acted in its own self-interest. Given the dearth of evidence presented on the issue, we cannot conclude that the Bankruptcy Court clearly erred in so finding.[4]

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[3] We note that two of our sister Courts of Appeals disagree with our substantial contribution analysis set forth in Lebron. See In re Celotex Corp, 227 F.3d 1336, 1338-39 (11th Cir. 2000); In re DP Partners Ltd., 106 F.3d 667, 672-73 (5th Cir. 1997).

[4] Because we conclude that the Bankruptcy Court did not err in finding that the Consortium failed to meet its burden of proof under Lebron, we need not address whether the Liquidating LandCo Debtors were properly subject to the Application.

6